People of State of Illinois, on Relation of Pielet Brothers, a Copartnership Consisting of Harry Pielet, Seymour Pielet, Arthur Pielet, and Philip Pielet, Appellees, v. Village of McCook et al., Appellants.

Gen. No. 46,263.

Opinion filed October 19, 1954. Released for publication January 4, 1955.

FINN, HAYES & SHEHEE, of Chicago, for appellants; RAYMOND F. HAYES, J. GLENN SHEHEE, and JOHN M. BERENT, all of Chicago, of counsel.

BLANKSTEN & LANSING, of Chicago, for appellees.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiffs, relators, filed their petition for mandamus to compel the defendants, respondents, to issue plain-

tiffs a license to operate a junk yard located in the Village of McCook. Defendants filed their answer to the petition and alleged in substance that plaintiffs had not complied with the Village ordinance; that defendants owed no duty to issue a license to plaintiffs and that in refusing the license they were exercising their sound discretion. The trial court after a full and complete hearing awarded plaintiffs the writ. Defendants appeal.

Defendants' principal contention is that plaintiffs failed to prove they had a clear legal right to the license and did not show an arbitrary abuse of discretion by the defendants in failing to issue it. A decision on this issue requires an examination of the relevant portion of the record.

The evidence in the case reveals that plaintiff Seymour Pielet, one of the copartners of Pielet Brothers, on the first Monday of October 1952, together with Gene Cortesi, his attorney and friend, appeared before the Board of Trustees of the Village of McCook, a municipal corporation. Seymour Pielet informed the Board that he would like a license to operate a scrap yard on the premises owned by the American Hair and Felt Company. This property was a little over ten acres in area, located in the midst of a highly industrialized section of the town and surrounded by the tracks of four railroads with feeder, switch and spur tracks running into the various properties. The American Hair and Felt Company was engaged in what is known as a retarder business, melting down horses' hoofs, horns and pigs' feet. A very obnoxious odor resulted from this so that people from miles around could smell it. The industries surrounding the property are a metal smelting plant, a quarry which blasts rock and crushes stone, a fertilizer plant and a company that melts tar down and puts it in drums. The nearest residence to the property is about one mile away.

545

One of the Board members, Charles Yuretich, said he would like to inspect relators' Hinsdale yard before issuing a license. Seymour Pielet and his brothers, Harry, Arthur and Philip Pielet, had been operating a scrap yard at Hinsdale, Illinois.

The ordinance of the Village of McCook at this time for junk dealers provided as follows:

"Licenses lawfully issuable by the Village, unless otherwise expressly provided for, shall be granted by the President with the approval of the Board of Trustees . . . Junk dealers—$25.00."

On the first Monday of November 1952, Seymour Pielet again appeared before the Village Board. He asked its members for their decision and a license pursuant to its ordinance. Defendant Yuretich said he didn't want a junk yard in McCook. The other members of the Board didn't say anything. A vote was then taken and plaintiff Seymour Pielet thought they had voted yes. Seymour Pielet again appeared before them on the first Monday of December 1952, together with his brother Sam. He again asked for a license. Present at that time was a resident of the town, Mathilda Svetich, who resided about a mile from the proposed site of plaintiffs' junk yard. She testified that she attended many of the Board meetings, that she saw Seymour Pielet at the meeting in December and at that time informed the Village Board that she thought plaintiffs should have a license. She said that she would rather have a junk yard than the smell of bone and hair burning. At the December meeting plaintiffs received no assurance from the Board that it would issue them a license to operate a scrap yard. On December 23, 1952, plaintiffs entered into a written agreement with the American Hair and Felt Company to purchase the property in question and made a down payment of $5,000 as earnest money. Subsequently on

March 27, 1953, they acquired possession of the property.

Defendants' version of what took place up to this time is that they first heard of Pielet Brothers and their desire to locate in McCook on December 1, 1952, when Eugene Cortesi, representing Pielet Brothers, and Seymour Pielet appeared at the Board meeting. The president of the Board, William E. Kroll, at that meeting appointed himself and others as a committee to inspect plaintiffs' Hinsdale yard. On December 15, Kroll reported to the Board that plaintiffs' yard in Hinsdale was an eyesore and not anything presentable for the Village of McCook.

In January 1953, plaintiffs submitted a written application to the Village Board for a junk-dealer's license. No license fee accompanied the application. Thereafter, also in January 1953, a letter was received by the Village dated January 12, 1953, from the Brookfield Iron and Metal Company making application for a license to operate a junk yard. This, too, was unaccompanied by a license fee. The application was rejected solely because Brookfield had already commenced doing business without a license. Defendants admit in their answer that plaintiffs' application was received prior to that of Brookfield's. Plaintiffs were not notified of any action taken by the Village Board on their application. They were not informed that it was invalid solely because unaccompanied by the required license fee. On February 2, 1953, a petition for writ of mandamus was filed in the superior court of Cook county by the Brookfield Iron and Metal Company to compel defendants to issue a junk-dealer's license. That same day, the defendant members of the Village Board amended the Village ordinance relating to license for junk dealers to require the applicant to furnish satisfactory evidence of good character and

certain written frontage consents. On February 9, 1953, the Village clerk received another application from the plaintiffs, this time accompanied by the $25 fee for a scrap iron and metal license. On February 18, 1953, the Village Board met and rejected plaintiffs' application for a license and returned the fee because no written frontage consents accompanied the application as provided in the Village ordinance adopted February 2. That same day, the 18th, the Village Board also issued a license to the Brookfield Iron and Metal Company—although Brookfield had as yet made no further application, nor paid the fee, nor submitted evidence of good character or written frontage consents. The Board on that same day further adopted another amendment relating to licenses for junk yards to restrict such licenses to "one license per every 500 inhabitants." The Village of McCook at that time had a population of 361. On February 23, 1953, the action for mandamus was settled with the Brookfield Iron and Metal Company by the entry of a consent order in which the writ was denied pursuant to a written agreement between the Village and Brookfield, and a junk-dealer's license was issued to Brookfield. Defendant John Capone, clerk of the Village, testified that after the entry of the consent decree, "I went back and told Brookfield to apply all over again. We gave them a license," without complying with the amendments made to the Village ordinance. With this application, for the first time, a check for the required fee was enclosed. Still no investigation of Brookfield was undertaken as to its good character nor was it required to file with its application written frontage consents.

It is the unquestioned law of this State that in granting licenses a municipality may use reasonable discretion. The exercise of that discretion, however, cannot be arbitrary, governed by fancy, caprice or prejudice. It must be sound discretion guided by law,

legal and regular. Such ordinances should be open to all upon the same terms and conditions. *City of Chicago v. Rumpff,* 45 Ill. 90; *Zanone v. Mound City,* 103 Ill. 552; *Harrison v. People,* 101 Ill. App. 224; *People ex rel. Zaransky v. Chicago,* 293 Ill. App. 301. Where discrimination exists, mandamus is the proper action to compel municipal authorities to grant a license. *Zanone v. Mound City, supra,* at 558.

■ The record before us discloses that the defendants created a series of hurdles and obstacles to prevent plaintiffs from obtaining a license. The ordinance under which plaintiffs made their original application had no specific requirements that a junk dealer had to meet; no specific form of application. It merely provided that licenses *shall* be granted by the president with the approval of the Board of Trustees. The fee was $25. There was no requirement that the fee was to be paid when the application for a license was made or at the time of issuance. It cannot be contended in view of the surrounding industries, that operation of a junk yard at that location would depreciate other property values. In fact, it is apparent that it would be an improvement over the type of business that was then being operated on the premises, to-wit: a renderer which melted down horses' hoofs, horns and pigs' feet which gave off obnoxious odors. In contrast, we have the very different action of the Village Board in issuing a permit to the Brookfield Iron and Metal Company. The record does not satisfy the ordinary requirements of equality under the law or indicate that the Village Board was exercising its discretion fairly. Its acts, so far as the plaintiffs were concerned, were clearly discriminatory and the ordinances adopted by it on February 2 and 18, 1953, were for the purpose of furthering such discrimination.

■ Defendants argue that plaintiffs were not entitled to a license to operate a junk yard because at the

time they made application they did not have title to the property, nor the right to immediate possession, nor the present right to build. They therefore could not complain of any action of defendants taken prior to March 27, 1953, when they took title. Plaintiffs did, on December 23, 1952, enter into a written agreement for its purchase. It is, of course, usual and customary for purchasers under circumstances such as obtain here not to take title until certain in their knowledge that it can be used for the specific objects and purposes contemplated. Defendants' contention possesses little merit. First, they made no such objection to plaintiffs' applications. Instead, they contrived numerous other reasons for denying plaintiffs a license. Second, plaintiffs had acquired title at the time of the hearing on their petition for a writ of mandamus. At the time of the hearing, plaintiffs demonstrated a clear legal right to the writ.

Certain other procedural objections are made by the defendants. We have examined them and find that they are of no substance. The order of the trial court granting the writ of mandamus is affirmed.

*Order affirmed.*

Schwartz, P. J., concurs.

Tuohy, J., took no part.