The Town of Cicero, a Municipal Corporation, Plaintiff-Appellee, v. George Weilander, Sr., Defendant-Appellant.

**Gen. No. 48,660.**

First District, Third Division.
May 16, 1962.

 

Francis E. Berg and Kriebel & Jorgenson, of Chicago, for appellant.

Christy S. Berkos, of Cicero (Miles Wlodek, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This interlocutory appeal is taken from an order entered in the Town Court of Cicero in favor of the Town of Cicero enjoining the defendant, George Weilander, Sr., from operating a trailer camp in the Town of Cicero without a license from the town. The order was entered by the court on notice and after a preliminary hearing, but without bond.

The defendant contends that the Cicero trailer ordinance under which the plaintiff is proceeding is illegal and void; that the State Trailer Coach Park Act under which the defendant has a license is controlling; and that no temporary injunction should have been issued in any case, or if it is held that a temporary injunction should have been issued, it should not have been issued without bond.

The Town of Cicero filed a complaint for injunction on November 6, 1961, and by leave of court an amended complaint was subsequently filed. The amended complaint alleged that the defendant was operating a trailer camp in the Town of Cicero; that until July

1, 1961 the defendant was licensed by the Town of Cicero to operate such trailer camp under a Cicero ordinance, chapter 20, article II; that on June 6, 1961 defendant was notified that he was in violation of the trailer ordinance and if the violations were not corrected his license would be revoked; that on July 6, 1961 the defendant was notified that because of ordinance violations his license would not be renewed, and since July 1st the defendant has been operating his trailer camp without a license from the town. The complaint further alleges that the defendant continues to operate his trailer camp without a license under conditions of "neglect, congestion, and lack of proper sanitation," and that the plaintiff has no adequate remedy at law and piecemeal prosecution would not remove the continuing danger to the public. The complaint prayed that the defendant be enjoined from continuing to operate his trailer camp without a Cicero license and that a temporary injunction issue enjoining the defendant during the pendency of the action from interfering with the plaintiff in enforcing the Cicero trailer ordinance. Attached to the complaint is a letter of June 6, 1961 from the town attorney to the defendant setting out some eighteen violations of the ordinance.

The defendant filed an answer admitting the existence of the Cicero ordinance, but alleging that it is illegal and void and is in conflict with the Illinois Trailer Camp Act, and that the State has preempted the regulation of trailer camps in its Act (Ill Rev Stats 1961, c 111½, §§ 158–185). The answer further alleges that the Cicero ordinance has failed to comply with the requirements of paragraph 185 of that chapter as the Cicero ordinance does not meet the minimum requirements of the Act as to location, construction and operation, and further that the fact of the non-application of the Act is not evidenced by a certificate of examination from the State Department of Public

Health. The answer admits that the defendant is now operating without a license from the Town of Cicero, but states that he is operating under a license issued by the Department of Public Health of the State of Illinois on May 24, 1961 and expiring April 30, 1962. The answer admits that there are approximately 100 trailers on plaintiff's property and denies all the allegations which the plaintiff has made in its complaint as to the absence and inadequacy of toilet and bathing facilities, absence of hot or cold water, failure to provide adequate wiring, violations of the Cicero ordinance as to garbage cans, distance of trailers from service building, deficiencies in rigid piping; that the water and sewer connections are connected closer than five feet, contrary to the State plumbing code, that the camp is in an unsanitary condition, and that there is any threat to the health, welfare and safety of the public. The answer admits that the Town of Cicero has notified trailer occupants to move from the premises and that he, the defendant, has advised them to disregard such notice, and admits that he will continue to interfere with the invalid Cicero ordinance since he is duly licensed by the State of Illinois to operate the trailer camp.

After hearing, the court entered an order purporting to be a temporary injunction, enjoining the defendant from operating the trailer camp without a Cicero license, and also from interfering with the plaintiff or any of its officers in enforcing the Cicero ordinance and "in resisting the investigation of violations," and the order further recites: "The Court being of the opinion that said proceedings being in the public interest, bond of the plaintiff is waived."

Under the pleadings and the procedure in this case it is necessary for us to consider the validity of the town ordinance. The Cicero trailer camp ordinance was passed on May 20, 1946. The defendant contends

that at the time the ordinance was passed the Town of Cicero had no authority to pass such an ordinance. The plaintiff contends that it had such right under the general police powers granted to it under its special charter (Laws of Illinois 1869, Private Laws, vol 3, p 666) and under par 87—1.1, chap 24, Ill Rev Stats 1959, granting to the town as concurrent and additional powers those granted cities and villages and incorporated towns under chap 24, par 23—61, defining and abating nuisance; par 23—72, regulating fire hazards; par 23—81, promoting health; par 23—85, regulating and prohibiting running at large of animals; par 23—89, prohibiting offensive business; par 23—90, regulating unwholesome places; par 23—105, granting police powers; and par 23—106, granting the right to the municipality to execute those powers and to impose a punishment.

■■ The object of a license is to confer a right or power which does not exist without it, and it may be to regulate and control the occupation or privilege for which the license is granted, so as to subserve the public good or prevent its being conducted in a manner injurious to the public welfare, or to raise revenue. 53 CJS Licenses, sec 2.

In Father Basil's Lodge, Inc. v. City of Chicago, 393 Ill 246, 65 NE2d 805, the Supreme Court discusses this question at some length, and the court says:

"The first contention of appellant is that the city is not authorized by the legislature, either expressly or by implication, to regulate and license 'Homes' and 'Nursing Homes,' and was therefore without power to pass the ordinances in question. The principles governing the powers of cities, including the power to license and regulate, and the source and exercise of such powers have been so frequently enunciated and so fully discussed in the recent decisions of this court (Arnold v. City

461

of Chicago, 387 Ill 532; City of Bloomington v. Wirrick, 381 Ill 347); that further elaboration upon the subject is unnecessary. It is well settled that a city, like all other municipal corporations, derives its existence and its powers from the General Assembly; that it possesses no inherent power; that in order to legislate upon, or with reference to, a particular subject or occupation, it must be able to point to the statute which gives it the power to do so; that statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it; that the only implied powers which a municipal corporation possesses and can exercise are those which are necessarily incident to powers expressly granted; and that since a city has no power except by delegation from the General Assembly, in order for it to license or regulate any occupation, the power to do so must be expressly granted or be necessarily implied in, or incident to, other powers which are expressly granted.

". . . The authority for the passage of an ordinance need not be wholly derived from a single grant of power by the legislature, but may be derived from several different grants of power. . . ."

The court states that there was no express power given to the city to regulate homes and nursing homes such as were involved in the case before it. The court points out that the legislature has delegated to cities and villages the power and authority to protect the lives of their citizens from the danger of fire, to promote the health of their population, and protect them from disease, and that under such delegations of police power a city may regulate any occupation or

business the unrestricted pursuit of which might either injuriously affect the health of the citizens or subject them to danger from fire. The court states that if the regulation of such conditions requires the conduct of the business peculiarly affected by them to be controlled by the limitations of a licensing ordinance, the power of the city to adopt such an ordinance will be necessarily implied. In the case the court calls attention to the fact that it has been held that cities, under their power to guard against fire and regulate the storage of combustible material, etc., were authorized to license and regulate the business of dry cleaning (Klever Shampay Karpet Kleaners, Inc. v. City of Chicago, 323 Ill 368, 154 NE 131), the business of manufacturing cosmetics (Chicago Cosmetic Co. v. City of Chicago, 374 Ill 384, 29 NE2d 495), the business of operating a filling station (Fligelman v. City of Chicago, 348 Ill 294, 180 NE 797), and, under the power to guard against fire, were authorized to regulate and license the business of installing heating plants (City of Chicago v. Wonder-Heating and Ventilating Systems, Inc., 345 Ill 496, 178 NE 192), and, under the power to promote health, were authorized to license and regulate laundries (Ruban v. City of Chicago, 330 Ill 97, 161 NE 133; Don v. City of Chicago, 314 Ill 201, 145 NE 386; Moy v. City of Chicago, 309 Ill 242, 140 NE 845). The court held that the city had the right to pass a license ordinance regulating homes such as were involved in the case.

In an article in the Illinois Law Forum the Father Basil's Lodge case is discussed, and the writers take the view that that case, together with Chicago Cosmetic Co. v. City of Chicago, supra, and Klever Shampay Karpet Kleaners, Inc. v. City of Chicago, supra, indicates that the court in the field of regulatory licensing is coming to recognize the breadth of implied power which is actually needed to meet the difficulties

of governing our growing urban centers. "Licensing as a Regulatory Device," Ancel and Siegel, Ill L Forum, vol 1957, No 1, p 61. In City of Chicago v. Drogasawacz, 256 Ill 34, 99 NE 869, the court upheld a city ordinance regulating and licensing bakeries, and the court says that the city "has the power, under section 78 of paragraph 62 of the Cities and Villages Act 'to do all acts, make all regulations which may be necessary or expedient for the promotion of health or suppression of disease.' One of the most important of police powers is that of caring for the health of a community. Not only under sections 50 and 53, but also under this provision of the Cities and Villages Act, plaintiff in error was authorized to pass the ordinance in question. . . . [Citing cases.]"

Where a municipality has the power to regulate it also has the power to license. City of Chicago v. Michalowski, 318 Ill App 533, 48 NE2d 541; City of Chicago v. Drogasawacz, supra; City of Chicago v. Arbuckle Bros., 344 Ill 597, 176 NE 761.

Under the rule laid down in the Father Basil's Lodge case and the other cases cited, it would seem to be clear that under the general police powers granted to the Town of Cicero it had power to regulate trailer camps and that the licensing ordinance of the Town of Cicero passed on May 20, 1946 was a valid exercise of that power. The town subsequently reenacted and codified the ordinance July 21, 1958.

The defendant argues that whether or not the Town of Cicero originally had the power to pass such an ordinance, the State, when it passed the State Trailer Coach Park Act, preempted the field of trailer camp regulation. That Act was passed in the 1953 session of the legislature. At the same session former section 23—87 of the Cities and Villages Act was amended. By that amendment, which now appears as paragraph 11—42—8 of chapter 24, Illinois Revised Statutes, the

464

Act was amended to specifically grant to municipalities the power to regulate house trailer camps. Section 21 of the Illinois Trailer Coach Park Act (chap 111½, par 185) provides that if the provisions of the Act as to location, construction, layout, sanitation, operation and maintenance are met as a minimum, the Act shall not apply in municipalities which provide for the licensing and regulation of trailer parks. However, the fact of such nonapplication shall be evidenced by a certificate of exemption issued by the Department of Public Health upon receipt of proof by the department of the enforcement of such ordinance or regulation prescribing such minimum requirements. Then there is a further provision that if at any time the department determines that the provisions of the Act are not being met as a minimum, it shall have the right to suspend the certificate of exemption until such standards are met. The defendant argues that unless this section is complied with a municipality has no right to enact or enforce any ordinance regulating trailer camps.

■ ■ It is a fundamental rule of statutory construction that the true intent and meaning of the law must be sought and a statute must be construed so as to ascertain and give effect to the general intention of the legislature as expressed in the statute. The primary purpose of statutory construction is to ascertain the legislative intent by examining not only the language employed but the evil to be remedied and the objective sought to be accomplished. Schoellkopf v. DeVry, 366 Ill 39, 7 NE2d 757. In Petterson v. City of Naperville, 9 Ill2d 233, 243, 137 NE2d 371, 377, the court says: "In construing the provisions of a statute it is not only proper, but often necessary, to consider the provisions of other statutes relating to the subject matter for the purpose of determining legislative intent. (Hepner v. County Board of School Trustees, 8 Ill 2d 235, at pages 241 and 242, 133 NE2d 39.)" See also

People ex rel. Bell v. New York Cent. R. Co., 10 Ill2d 612, 141 NE2d 38.

As we have pointed out, both of the Acts were passed at the same session of the legislature. In their briefs both plaintiff and defendant use up many pages in discussing whether the amendment to the Cities and Villages Act or the Trailer Coach Park Act was passed first. In our opinion such discussion is idle. See Petterson v. City of Naperville, supra. "Statutes adopted at the same session of the General Assembly ordinarily should be so construed, if possible, as to harmonize and give force and effect to the provisions of each." 34 ILP Statutes, sec 132. In People v. Peoria & E. Ry. Co., 383 Ill 79, 88, 48 NE2d 518, 523, the court says:

"A rule of construction, long established, requires that acts enacted at the same session of the General Assembly must be considered in pari materia, so that both acts must, if possible, be given effect. (People v. Thompson, 377 Ill 244; People ex rel. Martin v. Village of Oak Park, 372 Ill 488; People ex rel. Carnine v. Illinois Central Railroad Co., 337 Ill 276; People ex rel. City of Chicago v. Barrett, 309 Ill 53.) Acts which appear to be inconsistent are not to be so construed if it is possible to construe them otherwise."

■■■■ It is apparent that it was the legislative intent to provide for uniform regulation of trailer camps throughout the State, both in rural and urban communities. The legislature at that session specifically granted municipalities the power to regulate such camps. It also provided that in case the city's ordinance complied with the minimum requirements of the State statute and a proper certificate of exemption was secured, the State law would not apply to the municipality. It seems clear that the legislature intended to give the municipality a right to pass

a regulatory ordinance even though it did not comply with the minimum requirements of the State Act. The provision in paragraph 185 is not the same as that in the Plumbing License Law (Ill Rev Stats 1959, c 111½, § 116.50), which provided that a municipality of a certain class may pass an ordinance containing substantially the same provisions of the statute and that in such case the State law would not apply in the municipality. It has repeatedly been held that a municipality may exercise police power concurrently with the State (Aliotta v. City of Chicago, 389 Ill 418, 59 NE2d 829), and that the city may license and regulate in spite of the fact that the State has passed a comprehensive Act in the same field. Municipal authorities cannot under a general grant of power adopt or pass ordinances which infringe on the spirit of the State law or which are repugnant to the policy of the State as declared by its general regulations, but the police regulations of a municipality may differ from those of the State on the same subject if they are not inconsistent therewith. City of Chicago v. Union Ice Cream Mfg. Co., 252 Ill 311, 96 NE 872; McPherson v. Village of Chebanse, 114 Ill 46, 28 NE 454; Chicago Cosmetic Co. v. City of Chicago, supra.

The defendant argues that in many instances the requirements of the Cicero ordinance are less than the minimum requirements of the State law. An examination of the statute and the ordinance indicates a very slight variance between them. Under the rules laid down in the above cited cases both the State Act and the town ordinance may operate to regulate trailer camps. In City of Chicago v. Michalowski, supra, the court says: "Our courts have held that there is nothing inherently obnoxious in the requirement that a person engaged in a business shall have two licenses, one from the State and the other from the city. . . . Both the city and the State may occupy the same field of regu-

lation if the legislature so intends, and it has been held that a city may regulate an occupation which is also regulated by the State, provided there is no inconsistency or repugnancy between the two." In the instant case the ordinance neither infringes on the spirit of the State law nor is it repugnant to the policy of the State.

The next question to be considered is whether or not the town court properly issued a temporary injunction without requiring a bond.

 It is true that under certain circumstances an injunction may be brought in aid of a criminal law. City of Chicago v. Larson, 31 Ill App2d 450, 176 NE2d 675. Ordinarily a temporary injunction is issued for the purpose of maintaining the status quo, and it may properly issue wherever questions of law or fact to be ultimately determined are grave and difficult and if the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted. Puterbaugh, Chancery Pleading and Practice, vol 2, sec 626 (7th ed); O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446. In Admiral Trailer Mfg. Co. v. All States Trailer Co., 351 Ill App 513, 115 NE2d 560 (Abst), the court says: "Moreover, it has been repeatedly held that a temporary injunction, being a drastic remedy, should be granted only under extraordinary circumstances . . . ." The court further says: "The injunction restrained the corporate defendant from continuing its business in the ordinary course. This certainly was not a preservation of the status quo." Also see Kessie v. Talcott, 305 Ill App 627, 27 NE2d 857.

 The Injunction Act (Ill Rev Stats 1961, c 69) after setting out the requirements of a bond when a judgment is enjoined, provides (sec 9): In all other

cases, before an injunction may issue, the plaintiff shall give bond in such penalty, upon such condition and with such security as may be required by the court or judge: Provided, bond need not be required when, for good cause shown, the court or judge is of opinion that the injunction ought to be granted without bond." In the Admiral Trailer Mfg. Co. case, supra, the court further says:

> "The propriety of granting a temporary injunction without notice and without bond was squarely raised in Lee v. Morris (Abst), 326 Ill App 555, where the court made the following pertinent observation: 'The fact that the order granting the injunction makes a finding that the writ shall "for good cause shown, issue without bond," avails nothing unless cause is shown by the record. Wagner v. Okner, [306 Ill App 601]. The issuance of an injunction without giving a bond rests largely in the discretion of the court; nevertheless, a sufficient showing must be made on which to base the discretion. Grossman v. Grossman, [304 Ill App 507] . . .' "

A mere recital in the injunction order that the bond is excused for good cause shown is insufficient. Weinstein v. Levin, 317 Ill App 383, 45 NE2d 891. It has been held that the facts justifying the issuance of an injunction without bond must be alleged in the complaint. Buckwalter v. Buckwalter, 340 Ill App 219, 91 NE2d 127.

In the case before us the only prayer for a temporary injunction in the complaint was one to restrain the defendant from interfering with the plaintiff in enforcing the Cicero ordinance against any of his trailer tenants. There was no allegation that irreparable damage would be suffered in case the court refused to enter an order for a temporary injunction. Nor was

there anything in the hearing which would help sustain the court's order. The only witness who testified was one for the town, and he testified that a month before the filing of the suit he had inspected the camp and had found certain unsanitary conditions. One of the principal objections made by him was that the water connection and the sewer connection were not separated the distance required by the Illinois Plumbing Code. The Illinois Plumbing Code is apparently a code issued by the Department of Public Health to supplement the plumbing code as provided in paragraph 116.69, chapter 111½. The code was not introduced, nor do we have it before us. There is no showing that the conditions testified to by the witness were in existence at the time of the filing of the suit.

 The court in its order stated that because the proceedings are "in the public interest, bond of the plaintiff is waived." In 21 ILP Injunctions, sec 133, the following statement is found: "*Public interest.* The court may grant an interlocutory injunction without bond in cases where the public interest is involved." In 43 CJS Injunctions, sec 166a(1)(b) it is stated: "It has been held to be within the discretion of the court to grant an injunction without a bond in a case where the public interest is involved." In both cases Kerz v. Galena Water Co., 139 Ill App 598, is cited. In that case no appeal was taken from the order overruling the motion to dissolve the temporary injunction. The appeal was taken from a final decree, after hearing, making the temporary injunction permanent and approving a bond of the complainant. In the opinion the court states: "It is within the discretion of the court to grant an injunction without bond in a case where the public interest is involved, as it is in this case, but there should have been some showing in that regard before the injunction was granted." The court cites Kohlsaat v. Crate, 144 Ill 14, 32 NE 481, and states

470

that in the case before it no objection concerning the issuance of the temporary injunction could have been made by the appellant after a hearing on the merits in which the injunction is made permanent. In the Kohlsaat case the court states: "The statute does not provide that injunction bonds shall be required in all cases, as section 9 authorizes the judge or master granting an injunction, to order its issue without bond, in cases when, for good cause shown, he is of opinion that the injunction ought to be granted without bond." In Illinois Law and Practice, supra, O'Beirne v. City of Elgin, 187 Ill App 581, is also cited, in which case the objection was made that the bond had been approved by the clerk instead of by the judge, and the court says that that defect could be remedied by the chancellor upon proper application. The court then states that an injunction may be granted without bond where the public interest is involved, citing the Kerz case. These cases add nothing to the provisions contained in section 9 of the Injunction Act. Whether the basis for the granting of an injunction without bond is that the "public interest" is involved or for any other reason, there must be a showing made, and a mere recital in the order issuing the injunction is not sufficient. There is no rule of law which says that in every case where a public interest is involved the court may, without any further showing, order the issuance of a temporary injunction without bond. In Kessie v. Talcott, 305 Ill App 627, 27 NE2d 857, the court says:

> "Where it appears that a preliminary injunction is issued without notice, in a case where notice should have been given, or where the statute requires a bond to be given as a condition precedent to issuing a preliminary injunction and none is required, then it is the duty of this court, aside from any other question and without reference to

471

the merits of the cause as made by the averments of the complaint, to reverse the order denying the motion to dissolve the injunction upon that ground. Koelling v. Foster, 150 Ill App 130."

In the case before us the plaintiff is given all the rights which it would have had under a final injunction. The temporary injunction order does not maintain the status quo. It puts the defendant out of business. Had there been a full hearing the defendant would have been entitled to raise certain defenses, among others, the propriety of the refusal of the town to issue the license. When a municipality has the power to grant a license, the licensing agencies or officers are invested with a reasonable discretion to refuse the same. Such discretion, however, cannot be exercised arbitrarily. It must be a sound discretion guided by law. In People ex rel. Pielet Bros. v. Village of McCook, 3 Ill App2d 543, 123 NE2d 142, the court says: "It is the unquestioned law of this State that in granting licenses a municipality may use reasonable discretion. The exercise of that discretion, however, cannot be arbitrary, governed by fancy, caprice or prejudice. It must be sound discretion guided by law, legal and regular. Such ordinances should be open to all upon the same terms and conditions."

The temporary injunction should not have been issued. The judgment order of the Town Court of Cicero is reversed.

Reversed.

DEMPSEY and SCHWARTZ, JJ., concur.