Appellant is a minister, certified in accordance with the laws of a bona fide religious organization, known as Universal Church of The Master (Universal). She has been for some time past and is now the minister of the Temple of Spiritual Life, a recognized and chartered auxiliary of Universal.
Appellant practices her ministry in accordance with the constitution and by-laws of Universal. These, in substance, provide for Universal's interpretation of the Old and New Testaments, and as one of the solemn rituals of the church, prophecy by means of inspirational and spiritual communications, from the spirit world which are received as vibrations by the minister of the church and transmitted by the minister to the congregation.
In her ministry appellant attempts to receive and she asserts that on many occasions she does receive spiritual communications which she transmits to her congregation, and that this form of prophecy is attempted and accomplished by appellant in accordance with her religious beliefs as based on the Holy Bible.
On two occasions in June 1965, officers who sought to enter the church premises used by appellant, were told to place *Page 393 
questions on a piece of paper, initial the paper, that appellant would answer those questions, and that this service would cost a dollar. The police officers' questions related to future events, such as, whether a marriage would occur, whether a meeting would take place with an estranged parent and whether a trip would be made.[1]
In July 1965, appellant was arrested for violation of city ordinance section 43.30. When the case was called, there was a discussion, in chambers, among the judge, the attorney representing appellant, and the deputy city attorney. The criminal charge was dismissed on the People's motion, for insufficient evidence in light of the representation of "her counsel [that] such conduct as described in the arrest report would not occur again." *Page 394 
The dismissal was followed with a letter, dated October 1, 1965, from the Los Angeles Police Department which stated in pertinent part:
". . . . . . . . . . . . .
"At that time, Deputy City Attorney Myrrvold had sufficient facts for a prima facie case of fortune-telling against you. When the complaint was laid before Judge Smith, the Judge gave you the benefit of the doubt when he dismissed your case, but admonished you to discontinue your activity.
"This Department concurs with the Judge's admonishment and would have no alternative but to arrest you if you should engage in such activity in the future."
Appellant brought this action in declaratory relief to restrain the City of Los Angeles and named members of the police department (respondents herein) from interfering with her ministry and for a declaration that city ordinances, section 43.30[2] and section 43.31[3] are unconstitutional.
Appellant, corroborated by another minister, called on her behalf, testified that prophecy was an essential part of the spiritualist religious services conducted by her. She admitted, *Page 395 
however, that the statutory prohibition against charging a fee for a prophecy, would not affect the exercise or practice of her religion. She testified, and was corroborated by the minister called on her behalf, that if a fee or a sum of money was charged for a prophecy, it would be prohibited by her church.
Appellant further testified that she had never requested a fee for a prophecy and that there was no charge for admission to her church.
The trial court found: that there is no controversy between the parties; appellant is prohibited from taking a fee for a prophecy; the ordinance sections 43.30 and 43.31 are constitutional and that the ordinances in question "do not interfere, obstruct, prohibit or hinder" appellant "in the free exercise of her religion"; that she will suffer no irreparable injury and that appellant has an adequate remedy at law.
The constitutional point raised by appellant is that section 43.31 grants monopoly of fortune telling to religious organizations. This point has been squarely decided by the case of Gladstone v. Galton, 145 F.2d 742, 745. In Gladstone,
the court said, at page 745: "It is not claimed that section 43.30 against fortune telling is unconstitutional, but that the exemptions of section 43.31 grants a monopoly of fortune telling, etc. to religious organizations there described, and, hence, since it discriminates against other fortune tellers or the like, it violates the due process provisions of the Fourteenth Amendment. We do not agree. . . . Section 43.30 prohibits anyone from engaging in the business of fortune telling. Section 43.31 does not purport to permit persons to engage in the business of fortune telling, but it does provide that the provisions of section 43.30 shall not be deemed to prevent worship services of those who conduct such services of a church organization having as one of its tenets or articles of faith a belief in an ability to foretell the future, or to prophecy. When and if the ministers of such a church step aside from their pastoral duties and engage in the business of fortune telling, they render themselves subject to the prohibitory provisions of section 43.30."
It is clear from the language of section 43.30 that ". . . to engage in or carry on any business . . ." that it is incumbent upon the City to show that a fee, a consideration, or a sum of money or something of value must be agreed upon in exchange for the prophecy or the service of a prophecy as distinguished from a gift or donation before appellant can come within this section. In other words, a commercial transaction *Page 396 
is contemplated and required. (Mansfield v. Hyde, 112 Cal.App.2d 133, 137-138 [245 P.2d 577]; Burks v. Poppy Construction Co.,57 Cal.2d 463, 468 [20 Cal.Rptr. 609, 370 P.2d 313]; Swann v.Burkett, 209 Cal.App.2d 685, 694 [26 Cal.Rptr. 286].)
Section 43.31 provides that section 43.30 shall not be construed to prohibit a minister from exercising the spiritual function of a minister who is conforming to the rites and practices of his or her church.
[1] Nothing in the letter from the police department suggests appellant may not practice her religion in accordance with the tenets thereof as fixed by her own testimony. If appellant charged a fee to individuals to forecast events as illustrated in footnote 1, she would be fortune telling and she would not be within the exemption of section 43.31. On her own testimony, if such a charge were proved, she would not be following the "rites" and "practices" of her church.
Appellant's reliance on People v. Woody, 61 Cal.2d 716
[40 Cal.Rptr. 69, 394 P.2d 813], is misplaced. In Woody, an arrest was made for a practice (use of peyote) found to be intrinsically a part of a ritual of the faith practiced.[4] Since fortune telling is not a part of appellant's faith, and the taking of a fee for prophecy is prohibited by that faith, even assuming that fortune telling because it was a part of her faith, would be tolerated under the law, it is clear that the doctrine of Woody
has no application.
On the record before us there is no controversy presented for declaratory relief. Nothing in the judgment of the court impairs appellant's right to practice her faith as a minister or an adherent thereof. No court should attempt to prevent police officers from enforcing a valid law on the supposition that there cannot and will not be evidence of a breach thereof which requires its enforcement.
The only sound inference the police letter supports is that the police department will enforce the city ordinances in respect of fortune telling. There is no suggestion in the letter that defendant will be arrested for practicing her religion within the scope of its tenets as testified to by herself. We find nothing improper in the action of the police department. *Page 397 
(Gladstone v. Galton, supra, 145 F.2d 742; Professional FireFighters, Inc. v. City of Los Angeles, 60 Cal.2d 276
[32 Cal.Rptr. 830, 384 P.2d 158].)
In West Coast Poultry Co. v. Glasner, 231 Cal.App.2d 747
[42 Cal.Rptr. 297], the court says, at pages 753-754: "What was said in Monahan v. Department of Water Power, 48 Cal.App.2d 746, 751 [120 P.2d 730] [citation], almost a quarter of a century ago is still true today: `In that connection we may well observe that not only must the controversy be a justifiable controversy, as distinguished from "a difference or dispute of a hypothetical or abstract character; from one that is academic or moot," but it must be "definite and concrete, touching the legal relations of the parties having adverse legal interests." (Aetna Life Ins. Co. v.Haworth, 300 U.S. 227 [57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000].) In short, the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do.'"
Since appellant admits that her religious activities will not be affected if fees are not demanded for prophecy, it appears that appellant seeks a permanent injunction declaring the ordinances in question have no application to her and thus to immunize herself from arrest even though she violates the tenets of her faith in the ministry and practice thereof. If appellant is in fact practicing her faith in accordance with the precepts thereof, as testified to by herself, the First Amendment to the United States Constitution and article I, section 4 of the State Constitution, are as strong and effective guarantees of her right to do so, as can be written. If she is not doing so, and in the departure from the tenets of her faith, she violates the ordinances in question, the fundamental constitutional provisions cited do not protect her and she is not entitled to an injunction.
The judgment is affirmed.
Herndon, J., and Fleming, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied June 25, 1969.
[1] The police officer testified at the trial of this action in part as follows:
"A. . . . Reverend Allinger would pick up a piece of paper . . . state something to the effect that the vibrations are getting stronger, and then she would say . . . `Where is R.L.' and then she said, `Oh, there you are dear. No, you are not going to go on the trip', in response to questions. This happened approximately two to three times and then she answered, picked up my piece of paper, and stated, `The vibrations are weak. Who is D.P.M.?' I stated, `I am.'
". . . . . . . . . . . .
"Yes. On June 23, 1965, the first question I wrote — I wrote: `Can you help me find my mother?' The second question that I wrote was: `Will I be going back east? Q. I see. Where were these questions placed at this time, if you know? A. I then handed, folded the piece of paper, put my initials `DPM' and then handed it to the elderly female lady that was at the door. . . . Now, after you got in the interior part of the building where Mrs. Allinger was, did you have a conversation with her relative to these questions?
". . . . . . . . . . . .
"After Reverend Allinger asked me who the initials `DPM' was, and I stated I was, she inquired as to where I found the service. She stated, `When was the last time you had seen your mother?' I told her, `Three years.' She stated something to the effect — `Were you and your mother on good terms?' I stated, `No.' She stated I would see my mother before August and that I would be brought together through a friend to see my mother.
"In regard to the second question, she stated the answer is `No'. She asked why I wanted to go back east. I stated I could not find work out here in California. She asked what my occupation was. I stated I was a clerk. She stated, `No, it is always darkest before the dawn.' Q. Now, Officer, in respect to the first question, was your mother alive at that time? A. Yes, sir, she is. Q. When had you seen her the last time before the date of June 23, 1965? A. About a week or 10 days before this date. Q. Where had you seen her? A. She was at my house on this date. Q. Had you seen her frequently before that date? A. About every week, 10 days or so.
". . . . . . . . . . . .
"A. Reverend Allinger picked up one of the pieces of paper and then stated two initials. I don't recall the initials stated. `Where are you, dear?' She stated, `Here.' Reverend Allinger then stated, `No, definitely not. You will not need an operation.' At this time the lady that was seated in the audience stated, `Oh, thank you. I thought it was cancer.'"
[2]
 LOS ANGELES CITY ORDINANCE SEC. 43.30 FORTUNE TELLING
"No person shall advertise by sign, circular, handbill or in any newspaper, periodical or magazine, or other publication or publications, or by any other means, to tell fortunes, to find or restore lost or stolen property, to locate oil wells, gold or silver or other ore or metal or natural product; to restore lost love or friendship or affection, to unite or procure lovers, husbands, wives, lost relatives or friends, for or without pay, by means of occult or psychic powers, faculties or forces, clairvoyance, psychology, psychometry, spirits, mediumship, seership, prophecy, astrology, palmistry, necromancy, or other craft, science, cards, talismans, charms, potions, magnetism or magnetized articles or substances, oriental mysteries or magic of any kind or nature, or numerology, or to engage in or carry on any business the advertisement of which is prohibited by this section."
[3]
 LOS ANGELES CITY ORDINANCE SEC. 43.31 FORTUNE TELLING — EXEMPTIONS
"The provisions of the preceding section shall not be construed to include, prohibit or interfere with the exercise of any religious or spiritual function of any priest, minister, rector or an accredited representative of any bona fide church or religion where such priest, minister, rector or accredited representative holds a certificate of credit, commission or ordination under the ecclesiastical laws of a religious corporation incorporated under the laws of any state or territory of the United States of America or any voluntary religious association, and who fully conforms to the rites and practices prescribed by the supreme conference, convocation, convention, assembly, association or synod of the system or faith with which they are affiliated. Provided, however, that any church or religious organization which is organized for the primary purpose of conferring certificates of commission, credit or ordination for a price and not primarily for the purpose of teaching and practicing a religious doctrine or belief, shall not be deemed to be a bona fide church or religious organization."
[4] Appellant testified: "Q. Now, Mrs. Allinger, do you believe that if the State of California or the City of Los Angeles prohibited the charging of a fee for a prophecy that it would inany way affect the practice or exercise of your religion? A. No, sir. Q. Do you believe that such a prohibition would in any way
affect your religion in any manner, affect your religious belief in any manner? A. No." (Italics added.) *Page 398