[Civ. No. 33917. Second Dist., Div. Five. May 22, 1970.]

SAUL GREENBERG, Plaintiff and Appellant, v.
HOLLYWOOD TURF CLUB et al., Defendants and Respondents.

**COUNSEL**

Covey & Covey and Thomas J. Scully for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Henry Lewin, Deputy Attorney General, Mitchel, Silberberg & Knupp and Charles A. Collier, Jr., for Defendants and Respondents.

## OPINION

**KAUS, P. J.**—Plaintiff filed a complaint on November 13, 1967, alleging five causes of action against defendants. Six of the eight defendants countered with demurrers. Taken together the demurrers attacked all of plaintiff's alleged causes of action. On February 8, 1968, all demurrers were sustained "on the grounds stated therein." Leave to amend was granted. Plaintiff failed to amend and, on June 3, 1968, the action was dismissed under section 581, subdivision 3 of the Code of Civil Procedure as to defendants Hollywood Turf Club ("Hollywood"), Stewart, California Horse Racing Board ("the Board"), Hills, Kornik and Fluor. Plaintiff has appealed.

There are two groups of defendants on appeal. The first consists of Hollywood and Stewart, its alleged agent. The second group is comprised of the Board and its members, Hills, Kornik and Fluor.

The alleged facts common to all counts of the complaint are these: Plaintiff is a trainer of horses and stable agent licensed to practice in both capacities by the Board. On or about May 3, 1967, he secured employment with one Michael Millerick, a licensed trainer of horses, who had previously obtained stable space at the Hollywood Park race track, which is run by defendant Hollywood. Plaintiff was employed as a stable agent for the racing meet at Hollywood Park starting May 10, 1967. The duties of a stable agent consist of supervising the business procedures of a race track stable. In order to perform the duties, it is necessary for the agent to enter the stable area of the track. After plaintiff was employed Hollywood required Millerick to submit a list of all his employees who would be entering the stable area at Hollywood Park during the meet. With knowledge that plaintiff was a licensed stable agent and employed by Millerick, defendants Hollywood and Stewart "summarily and without notice to plantiff ordered . . . Millerick to remove the name of plaintiff from the list . . . on the ground that Hollywood . . . would not permit plaintiff to enter said stable area." Plaintiff alleged that Hollywood excluded him "without reason or just cause."

In addition to the alleged facts recounted above, plaintiff alleged in his purported third cause of action that he had protested his exclusion from the stable area to the Board, that he had requested a hearing, but that the Board had denied such a hearing.

The five causes of action can be summarized as follows: In count I plaintiff sought a declaration that the order excluding him from the race track stable area was "unconstitutional" since it denied him due process and equal protection of the laws. In count II plaintiff sought a declaration that Hollywood lacks constitutional power to exclude him from the area since he is licensed by the Board as a stable agent.[1] Count III is a declaratory relief count against the Board in which plaintiff claims that he was improperly denied a hearing by the Board on his exclusion from the track stable area. In count IV plaintiff sought actual and exemplary damages against Hollywood and Stewart for intentionally and successfully inducing Millerick to breach his employment contract with plaintiff. In count V plaintiff sued Hollywood and Stewart for damages for intentionally interfering with plaintiff's prospective economic advantage by preventing his negotiations with other trainers and horse owners in the stable area for employment at other racing meets.

General demurrers were directed to all counts by each defendant. In addition, defendants Hollywood and Stewart attacked the complaint as uncertain. (Code Civ. Proc., § 430, subd. 7.) The trial court clearly sustained the demurrer filed by the Board and its members on the ground that the complaint did not state a cause of action against that group of defendants. As to the other group, the court's ruling sustaining their demurrers was made "on the grounds stated therein," which we must take to include the special demurrers. Since plaintiff declined to amend, we must affirm the judgment as to those defendants—Hollywood and Stewart—if any objection raised by them is valid. (*Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, 424 [282 P.2d 890]; cf. *Youngman* v. *Nevada Irr. Dist.,* 70 Cal.2d 240, 251-252 [74 Cal.Rptr. 398, 449 P.2d 462].) In order to narrow the issues confronting us, we shall first consider the special demurrers and then proceed to a discussion of the general demurrers.

■ The complaint is claimed to be uncertain in two ways. First, Hollywood and Stewart charge that they cannot determine whether plaintiff has

[1]Although the controversy alleged in counts I and II is alleged to exist between plaintiff and all defendants, it is quite apparent from the context of the complaint and the arguments before us, that actually the Board and its members were never intended to be drawn into the controversy set forth in those counts. It would have been futile to attempt to do so. While presumably the Board is more than casually curious about the rights and wrongs of plaintiff's dispute with Hollywood, that feud does not involve the legal relations between plaintiff and the Board. That is true even if the Board has definite views on the merits of the controversy and although the interpretation of one or more of its own rules may be involved in the proper resolution thereof. Were it otherwise anyone who ever sides with a party to a legal dispute or any governmental unit whose laws or regulations are involved in a dispute, could wind up defending a lawsuit in which he or it has no legal interest. (See *City of Coronado* v. *Sexton,* 227 Cal.App.2d 444, 451 [38 Cal.Rptr. 827]; *Oppenheimer* v. *General Cable Corp.,* 143 Cal.App.2d 293, 297 [300 P.2d 151].)

based his claims upon an alleged order requiring Millerick to remove plaintiff's name from his list of employees, or upon an alleged order excluding plaintiff from the stable area at Hollywood Park. We think the ambiguity is insignificant. Obviously, the thrust of plaintiff's complaint is that he is unhappy because he has been prevented from entering the stable area in order to practice his vocation. The allegations sufficiently apprised defendants of the issues they had to meet. (*Smith* v. *Williams,* 55 Cal.2d 617, 619 [12 Cal.Rptr. 665, 361 P.2d 241]; *Lord* v. *Garland,* 27 Cal.2d 840, 853 [168 P.2d 5].)

■ The second objection is more substantial, Hollywood and Stewart say they cannot ascertain from the complaint whether plaintiff has attempted to state a cause of action against Stewart in counts I, II, III and IV and against Hollywood in count III. As to defendant Stewart, we agree that it is uncertain whether counts I and II are aimed at him because nowhere in those counts is it alleged that he personally excluded plaintiff from the track stable area. Since plaintiff did not use the opportunity to amend, we must assume that he stated his claims as forcefully as he could. (*Sierra Inv. Corp.* v. *County of Sacramento,* 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519]; *Straughter* v. *Safety Savings & Loan Assn.,* 244 Cal.App.2d 159, 162 [52 Cal.Rptr. 871].) Consequently, the lower court could well have sustained the special demurrer of Stewart as to counts I and II.

■ Count III is clearly not directed against Hollywood or Stewart and even their general demurrer, was therefore properly sustained. ■ Count IV on the other hand is equally clearly addressed to Stewart. It alleges that he and one Maluvius, a defendant who has never appeared in the action, made the order excluding plaintiff with the intent to induce Millerick to breach of his contract of employment. Stewart's special demurrer to count IV should have been overruled.

After our disposition of the special demurrers, we are left with a complaint that purports to state claims against the following defendants: counts I and II are addressed to Hollywood only, count III is directed against the Board and its members, and counts IV and V are addressed to Hollywood and Stewart.

### THE COUNTS SEEKING DAMAGES (IV & V)

We turn now to a consideration of the general demurrers.

■ In count IV plaintiff claims that defendants Hollywood and Stewart induced Millerick to breach his employment contract with plaintiff. The allegations cover each element of the cause of action. Plaintiff alleged

(1) that a contract existed between himself and Millerick, (2) that the two defendants barred plaintiff from the race track stable areas, (3) that at the time they ordered plaintiff excluded from the stable area the defendants knew of the existence of the contract, (4) that they made the order with the intent wrongfully to induce Millerick to breach the contract and (5) that the order proximately caused Millerick[2] to breach the contract, resulting in damages to the plaintiff. (*Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33 [112 P.2d 631]; *Pacific Auto. Ins. Co.* v. *Superior Court,* 273 Cal.App.2d 61, 67-68 [77 Cal.Rptr. 836]; *Freed* v. *Manchester Service, Inc.,* 165 Cal.App.2d 186, 189 [331 P.2d 689]; cf. *Charles C. Chapman Bldg. Co.* v. *California Mart,* 2 Cal.App.3d 846, 853 [82 Cal.Rptr. 830].) Justification for defendants' exclusion of plaintiff being a matter of affirmative defense (*Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202, 207 [14 Cal.Rptr. 294, 363 P.2d 310]; *Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875, 883 [306 P.2d 783]; *Freed* v. *Manchester Service, Inc., supra,* 165 Cal.App.2d 186, 190), the absence of an allegation that the two defendants acted capriciously should not be considered upon a general demurrer, at least where the complaint does not reveal such justification on its face.

■ Count V charges that Hollywood and Stewart intentionally interfered with plaintiff's lawful vocation without justification. The count alleges that at the time of plaintiff's exclusion Hollywood and Stewart knew that because of plaintiff's employment as a stable agent by Millerick,[3] he was in a position to realize extensive economic benefits by negotiating for future employment with other trainers and owners in the stable area, that he would have realized such benefits had he not been excluded, that in the past all of plaintiff's employment had been procured in the stable areas of other tracks and that the exclusion order was made with intent to destroy and interfere with plaintiff's economic relationship with the other trainers and owners.

---

[2]It seems that a more plausible claim might be based upon the theory that the exclusion order prevented plaintiff from performing his employment contract with Millerick. (See *Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465].) The point is immaterial on this appeal. The trial court's ruling obviously was not based on a view that Millerick did not breach his contract but that both parties were discharged by impossibility.

[3]By pointing to the fact that plaintiff claimed access to the stable area by virtue of his contract with Millerick, he has perhaps narrowed the right claimed in count V. He appears before the court not just as a jobless licensed stable agent who wants to get into the stable area to solicit employment, but one who already has a job which, but for defendants' interference, would permit him to come into contact with other trainers and owners. We need not decide whether this difference in fact necessarily calls for a different result if a stable agent with no previous contract is arbitrarily excluded.

It is evident that plaintiff has here attempted to state a cause of action for the tort sometimes known as "interference with prospective advantage." (*Willis* v. *Santa Ana etc. Hospital Assn.,* 58 Cal.2d 806, 810-811 [26 Cal.Rptr. 640, 376 P.2d 568]; 2 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 1332-1334.)

Defendant Hollywood and Stewart's obvious answer to the charge is that the interference with plaintiff's contract and his negotiations for prospective employment is only incidental to Hollywood's right as a property owner to keep persons it does not want off its premises.

We do not believe, however, that the problem is so easily solved. The complaint adequately alleges, as against a general demurrer, that the stable areas of race tracks are the natural places where negotitions for future employment can be conducted[4] because that is where the prospective employers are to be found. ■ It is a matter of judicial notice that by virtue of the licensing powers of the Board, racing associations have a quasi-monopoly and that the number of tracks in operation at any one time is severely limited. (Bus. & Prof. Code, § 19530 et seq.; see also footnote 5, *post.*) ■ This imposes upon Hollywood certain obligations to which other land owners are not subject. The rule which prevents arbitrary exclusions of doctors (*Rosner* v. *Eden Township Hospital Dist.,* 58 Cal. 2d 592, 598 [25 Cal.Rptr. 551, 375 P.2d 431]), orthodontists (*Pinsker* v. *Pacific Coast Soc. of Orthodontists,* 1 Cal.3d 160 [81 Cal.Rptr. 623, 460 P.2d 495]), motion picture directors or projectionists (*Directors Guild of America, Inc.* v. *Superior Court,* 64 Cal.2d 42, 50-51 [48 Cal. Rptr. 710, 409 P.2d 934]; *Thorman* v. *International Alliance etc. Employees,* 49 Cal.2d 629, 632-633 [320 P.2d 494], overruled on other grounds by *Consolidated Theatres Inc.* v. *Theatrical Stage Employees Union,* 69 Cal.2d 713, 721, fn. 8 [73 Cal.Rptr. 213, 447 P.2d 325), and shipyard workers (*Thompson* v. *Moore Drydock Co.,* 27 Cal.2d 595 [165 P.2d 901]; *James* v. *Marinship Corp.,* 25 Cal.2d 721, 730-736 [155 P.2d 329, 160 A.L.R. 900]) from membership in hospital staffs, professional organizations and unions, where because of a monopoly or quasi-monopoly[5] situation, such membership is a "practical necessity" (*Pinsker* v. *Pacific Soc. of Orthodontists,* 1 Cal.3d at p. 166 [81 Cal.Rptr. 623, 460 P.2d 495]) for the practice of one's calling, is adequate to cover the situation in the case at bar.

---

[4]". . . all of [plaintiff's] employment in the past has been procured at stable areas of other racing associations. . . ."

[5]The Board's 1967 annual report states that during that year there were a total of 316 days for "running races" licensed by it. Of these the defendant Hollywood had 55 days between May 10, 1967, and July 24, 1967. Its only competition between those dates was a meet at Golden Gate Fields in northern California from May 9, 1967, to May 23, 1967, comprising 13 racing days.

Hollywood and Stewart rely strongly on the rule ". . . that in the absence of statute there exists no constitutional or common-law right of access to race tracks or other places of public amusement comparable to the right to accommodation at inns." (*Flores* v. *Los Angeles Turf Club,* 55 Cal.2d 736, 742 [13 Cal.Rptr. 201, 361 P.2d 921].) The rule apparently applies not only to patrons, but also to persons who pursue their calling at race tracks. (*Martin* v. *Monmouth Park Jockey Club,* 145 F.Supp. 439, affd. 242 F.2d 344 [licensed jockey].) No case has been cited, however, where the absolute privilege to exclude has been expressly considered in juxtaposition to the right of a licensed person who seeks access, that the track not interfere with his actual or prospective contractual relationships.[6]

Hollywood and Stewart put much reliance on *Greenberg* v. *Western Turf Assn.,* 140 Cal. 357 [73 P. 1050]. Although we believe that that case would be distinguishable even if decided today, for present purposes we need only point to the fact that the statement in *Boyson* v. *Thorn,* 98 Cal. 578 [33 P. 492] saying that there was no cause of action for malicious intervention with an actual contractual right, was not "explained" until *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 38-39 [112 P.2d 631], almost four decades after *Greenberg.*

Plaintiff's right was, of course, not absolute. There are many occasions when a defendant is privileged to interfere with an existing contractual relationship. (*Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d 202.) The privilege to interfere with a mere prospective economic advantage is even broader. (*Shida* v. *Japan Food Corp.,* 251 Cal.App.2d 864, 866 [60 Cal. Rptr. 43].) ▮ "Whether an intentional interference by a third party is justifiable depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances including the nature of the actor's conduct and the relationship between the parties."

---

[6]Among the various cases cited by Hollywood and Stewart, the *Martin* case is closest on its facts. Martin had been suspended in another state for having placed a bet on a horse other than the one he was riding. He was reinstated, but the defendant jockey club would not permit him to ride at its track. In holding against the plaintiff the court relied on the general rule that as a private corporation the defendant could "admit or exclude any persons it pleases." It is, however, of some significance that the court also relied on the defendant's justification for Martin's exclusion: "In a sport where the greatest importance should attach to dissipating any cloud of association with the undesirable, and in which the appearance as well as the fact of complete integrity is of paramount consideration, to exclude plaintiff from riding because of his record was an understandably warranted exercise of discretion." (145 F.Supp. p. 441.) We do not mean to indicate that far less than the previous conduct of Martin may not suffice to justify plaintiff's exclusion from the stable area.

(*Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d at p. 206.) We have no doubt that in view of the nature of the activities carried on at race tracks and particularly in view of the nature of the activities that can be but should not be carried on in the stable areas of race tracks, their operators are justified in effectively nullifying contracts, actual or prospective, for reasons which would be totally inadequate in different contexts. This is not an occasion for spelling out abstract guidelines for the trial court. We are confident that when in this and future cases the legitimate interests of persons such as plaintiff, of institutions such as Hollywood and of the public[7] are weighed in the light of the actual facts presented, the law will be able to arrive at an equitable accommodation. We do not believe, however, that in order to protect their legitimate interests, race tracks need an absolute immunity from having to justify the exclusion of trainers or stable agents from the few places where they can ply their licensed trade or can conveniently find future employment. Absolute immunities are falling into disfavor in other areas. (*Johnson* v. *State of California,* 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352].) We think that the general principle that a party whose conduct causes legal injury should justify himself, applies here as well. For the above reasons the general demurrer to counts IV and V should have been overruled.

### THE DECLARATORY RELIEF COUNTS (I, II, III)

Counts I and II, directed against Hollywood only, seek a declaration to the effect that Hollywood, for various statutory and constitutional reasons, could not arbitrarily exclude plaintiff from the stable area of its track. In those counts plaintiff apparently bottoms his right to admission solely on his license, his employment contract with Millerick being pleaded as a fact, but not being mentioned as one of the factors on which he relies as supporting the rights he desires the court to declare. It is therefore apparent that plaintiff wants a declaration of rights in addition to any that would be implicit in a recovery on counts IV and V. The reasoning behind the pleading of counts I and II is that the various constitutional and statutory provisions on which plaintiff relies entitle him to admission to the stable area regardless of whether or not he has employment or whether he desires to solicit future employment.

We have come to the conclusion that we should reverse as to counts I and II without reaching their merits, even if we assume, for discussion only, that plaintiff's claims are legally unsound. Since the judgment in favor of Hollywood and Stewart must be reversed with respect to

---

[7]The 1967 report of the Board shows that the average daily amount of money wagered during the meet at Hollywood Park was $3,065,827.

counts IV and V, we think the better course to pursue with counts I and II is to apply the rule that a plaintiff in a declaratory relief action is entitled to a declaration of his rights, even if it be adverse. (*Salsbery* v. *Ritter*, 48 Cal.2d 1, 7 [306 P.2d 897]; cf. *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540, 550 [305 P.2d 20].) Strictly speaking, therefore, a demurrer is not the appropriate weapon with which to attack the merits of a claim for declaratory relief. True, the cases have developed a judicial shortcut whereby the appellate opinion discussing a judgment which follows the sustaining of a demurrer, in effect becomes the adverse declaration which would have been the plaintiff's only right to relief in the lower court. (*Cherry* v. *Home Sav. & Loan Assn.*, 276 Cal.App.2d 574, 578 [81 Cal.Rptr. 135]; *Haley* v. *Los Angeles County Flood Control Dist.*, 172 Cal.App.2d 285, 292-294 [342 P.2d 476].) The judgment which should not have been entered is then affirmed on the theory that it would be a waste of time to send the case back to the trial court for the sole purpose of making a declaration necessarily adverse to the plaintiff. This case, however, must go back because of counts IV and V and the reason for applying the rule of the *Cherry* and *Haley* cases disappears. Evidence will have to be taken. It may well appear that even if plaintiff's pleaded position on counts I and II is legally sound, the constitutional clothing which he has donned in the complaint does not suit his personality as revealed by the evidence. It would then become unnecessary for the trial court to reach the fundamental legal propositions on which the request for declaratory relief rests. There is no right to such relief on abstract or hypothetical facts. (*Allinger* v. *City of Los Angeles*, 272 Cal.App.2d 391, 397 [77 Cal.Rptr. 257]; *West Coast Poultry Co.* v. *Glasner*, 231 Cal.App.2d 747, 753-754 [42 Cal.Rptr. 297].)

In count III plaintiff has sought a declaration that the Board incorrectly refused to grant him a hearing on the propriety of the exclusion order. In claiming that he was entitled to a hearing, plaintiff relies upon sections 19572 and 19573 of the Business and Professions Code, which empower the Board to promulgate rules for excluding certain persons from any portion of an enclosure where horse races are authorized, but require that any person excluded pursuant to such a rule be accorded a hearing on the question of whether the rule applies to him. The Board has implemented the statutes through rules which constitute article 41 of title 4 of the California Administrative Code (§§ 2000-2011). These rules direct racing associations to exclude certain catagories of persons from their racing enclosures. (4 Cal. Admin. Code, §§ 2000-2002.) Pursuant to the statutory requirement, section 2007 of the title provides that any person who is

excluded may apply to the Board for a hearing on "the question of whether he is within one of the classes of persons who are prohibited from being present within the enclosure."

██ If plaintiff had asserted in his hearing request that he had been excluded under a Board rule but that he was not a person covered by such a rule, he would have been entitled to a hearing. (4 Cal. Admin. Code, § 2007.) He did not,[8] however, so the Board could properly deny his request.

Plaintiff's argument appears to go further. He asserts that the Board should hold a hearing to determine if a racing association has acted properly in excluding a person for any reason. We find nothing in the applicable statutes or in the Board's regulations promulgated pursuant thereto, which declares the existence of any such right.[9]

The judgment is affirmed with respect to the respondent Board and respondents Hills, Kornick and Fluor. The judgment is also affirmed with respect to the respondent Stewart as to counts I and II. The judgment is reversed with respect to the respondent Hollywood as to counts I, II, IV and V and with respect to the respondent Stewart as to counts IV and V.

Stephens, J., and Aiso, J., concurred.

---

[8]We take judicial notice of the fact. A certified copy of plaintiff's request is attached to the Board's demurrer as exhibit A. The certification recites that the document is a true copy of the original request which is on file with the Board, and as such is an official record of the Board. Therefore, we may take judicial notice of the document's contents. (Evid. Code, § 452 subd. (c) and Assembly Committee comment thereto; *Agostini* v. *Strycula*, 231 Cal.App.2d 804, 806 [42 Cal.Rptr. 314]; *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768, 772-773 [308 P.2d 872]; Witkin, Cal. Evidence (2d ed. 1966) § 166, p. 153.) The fact that the document's contents are used in support of a demurrer does not alter the propriety of taking judicial notice of the request. (*E. H. Morrill Co.* v. *State of California*, 65 Cal.2d 787, 795 [56 Cal.Rptr. 479, 423 P.2d 551]; *Contractor's etc. Assn.* v. *California Comp. Ins. Co.*, 48 Cal.2d 71, 75 [307 P.2d 626]; *Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 P. 666]; *Alta-Dena Dairy* v. *County of San Diego*, 271 Cal.App.2d 66, 72 [76 Cal.Rptr. 510].)

[9]We say nothing concerning the power of the Board to investigate a dispute between two of its licensees should it desire to do so. The record is plain to the effect that the Board did not so desire.