Roger Cox, Plaintiff-Appellee, *v.* National Jockey Club *et al.*, Defendants-Appellants.

(No. 60316;

First District (4th Division)—December 11, 1974.

Thomas D. Nash, Jr., Robert M. Ahern, and Thomas J. Cisar, all of Chicago, for appellant.

Coghlan and Joyce, of Chicago (William J. Nellis, of counsel), for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

This is an interlocutory appeal from an order of the trial court granting the plaintiff's request for a preliminary injunction against the defendants. This appeal is brought pursuant to Illinois Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1973, ch. 110A, par. 307(a)(1)).

Plaintiff, Roger Cox, is a jockey and brought suit against the defendants seeking injunctive relief. Plaintiff sought an order which would prohibit the defendants from excluding him from participating as a jockey in a thoroughbred horse racing meet to be conducted by the National Jockey Club. The plaintiff's complaint alleged that plaintiff is engaged in the occupation of a jockey for profit and that he was issued his 1974 jockey license by the Illinois Racing Board on April 17, 1974. The defendant, National Jockey Club, is an Illinois corporation that conducts thoroughbred horse racing meets and was licensed by the Illinois Racing Board to hold such a meeting at Sportsman's Park, Cicero, Illinois, commencing April 19, 1974. The individual defendants, Bidwill, Johnston and Scott

are respectively the president, secretary and entry clerk of the National Jockey Club.

Plaintiff's complaint stated that on and prior to April 17, 1974, he had been employed to ride several horses which had been entered in the races to be held by the defendants on April 19, 1974, at Sportsman's Park. Plaintiff was so employed by four different horse trainers. The fact of this employment was communicated by plaintiff to the National Jockey Club and defendant Bidwill. Plaintiff's complaint stated that "on April 17, 1974, after plaintiff Roger Cox has been issued his 1974 license as a jockey by the Illinois Racing Board, and during the drawing of races for Friday, April 19, 1974, defendant National Jockey Club and its officers and employees, including defendants Charles W. Bidwill, Jr. and Thomas Scott, and other persons unknown to plaintiff Roger Cox, by concerted, arbitrary and unlawful action caused the name of plaintiff Roger Cox to be removed, eliminated and scratched from the listing of all horses he had been employed and retained to ride on Friday, April 19, 1974 * * * with the direct result of malicious and unlawful interference with the employment and contractual relationships of plaintiff Roger Cox and his inability to conduct his business as a jockey on April 19, 1974, and thereafter, and extensive damages to his business reputation." Plaintiff alleged that the defendants had a duty and obligation under the laws of Illinois not to interfere directly or indirectly with him in his business and occupation as a jockey and not to interfere directly or indirectly with him in his business employment and contractual relationships with third persons. Plaintiff alleged financial damages by virtue of the defendants' interference with his business, employment, and contractual relationships and damages to his reputation.

Plaintiff's complaint also stated that unless plaintiff was awarded a temporary restraining order or preliminary injunction before 7 A.M. on Friday, April 19, 1974, he would suffer immediate and irreparable injury in that he would be prevented from employment as a jockey, not only on April 19, but throughout the horse racing meet to be conducted by defendant, National Jockey Club, at Sportsman's Park during 1974. It was at that hour that the programs for the races to be held on April 19 were to be printed which would include the names of the jockeys riding the horses entered in the races for that day. As previously stated, plaintiff requested that the trial court grant a temporary restraining order or preliminary injunction against the defendants. In addition, the plaintiff's prayer for relief requested that upon a final hearing and determination the temporary restraining order or preliminary injunction be made permanent and that plaintiff be awarded a judgment including actual damages, exemplary damages, a reasonable attorneys' fee and costs.

The plaintiff's complaint was filed on April 18, 1974, and at the same time plaintiff filed a motion for a temporary restraining order or preliminary injunction. The defendant responded to the plaintiff's complaint and motion by filing a motion to dismiss on April 18, 1974. The motion to dismiss was premised on the grounds that the complaint failed to state a claim upon which any relief could be granted; the complaint was insufficient in law; the complaint did not state sufficient facts upon which the relief requested could be granted; that since the National Jockey Club is a private corporation it can exclude any person from its premises or deny any person racing privileges for any reason except race, color, creed or place of national origin; and that the allegations of the complaint failed to establish any unlawful corporate conduct or conduct by any of the individual defendants which would permit the granting of the relief requested.

On April 18, 1974, after a hearing, the trial court granted the plaintiff's request for a preliminary injunction. The trial court's order prohibited the National Jockey Club and the individual defendants from (1) directly or indirectly interfering with the lawful business and occupation of the plaintiff as a licensed jockey; (2) from directly or indirectly interfering with the business, employment and contractual relationships of the plaintiff as a licensed jockey; (3) from directly or indirectly causing plaintiff or his name to be removed from any horse he had been employed or retained to ride as a jockey; and (4) from directly or indirectly impeding plaintiff in the lawful pursuit of his business and relationships as a licensed jockey at Sportsman's Park race track throughout the 1974 horse racing meet being conducted by the National Jockey Club at Sportsman's Park. In addition, the trial court found that there was no just cause for delay in any enforcement of or appeal from its order. The defendants appeal and seek a reversal of the trial court's order.

■■ The defendants maintain that a private corporation which is licensed by the State to conduct a horse racing meet on privately owned premises may unqualifiedly deny a licensed jockey permission to participate in its racing meet if the exclusion is not based upon reasons of race, religion, color or national origin. The plaintiff contends that a licensee conducting a horse racing meet in Illinois cannot arbitrarily and without reason or justification exclude a licensed jockey from participation in its meet. The plaintiff's contention is premised on three grounds: (1) That the license issued to him by the Illinois Racing Board constitutes a ticket of admission to any race track in which he desires to ply his trade; (2) that the rules and regulations adopted by the Illinois Racing Board regarding stewards and their power and authority indicate that the licensee conducted a horse racing meet is to relinquish all con-

trol over such meet to the stewards; and (3) that by virtue of section 2 of the Horse Racing Act (Ill. Rev. Stat. 1973, ch. 8, par. 37b) the National Jockey Club had a monopoly over thoroughbred horse racing at the time in question and, therefore, could not exclude a jockey without reason or justification. While we do not agree with the plaintiff's position in all respects, we are of the opinion that a private corporation licensed by the State of Illinois to conduct a horse racing meet on private property cannot arbitrarily deny a licensed jockey permission to participate in its racing meet.

■■■ A license issued to a jockey by the Illinois Racing Board does not constitute a ticket of admission to any race track in which the jockey desires to ply his trade. The Horse Racing Act, section 3.1, allows the Illinois Racing Board to issue licenses to jockeys "to engage in their vocation within such race track enclosures." (Ill. Rev. Stat. 1973, ch. 8, par. 37c—2.) The information which the applicant is required to supply, the procedures the Board is to follow in issuing a license and the reasons upon which the Board can refuse to issue a license indicate that this provision of the Act is primarily directed toward preventing undersirables from engaging in horse racing activities. As was stated in *Town of Cicero v. Weilander*, 35 Ill.App.2d 456, 461, 183 N.E.2d 40, 43 (1962):

> "The object of a license is to confer a right or power which does not exist without it, and it may be to regulate and control the occupation or privilege for which the license is granted, so as to subserve the public good or prevent its being conducted in a manner injurious to the public welfare, or to raise revenue. 53 CJS Licenses, sec. 2."

Although an applicant for a jockey's license is required to pay a fee, section 3.1 of the Horse Racing Act is not primarily intended to raise revenue. Its purpose is to regulate and control the occupation of a jockey and to insure that the occupation is not engaged in by those who would practice it in a manner injurious to horse racing and the public welfare.

The Illinois Racing Board has adopted pervasive rules and regulations pursuant to its rule-making power. (Ill. Rev. Stat. 1973, ch. 8, par. 37a7.) The plaintiff has cited rules 23 to 30 inclusive, rule 45 and rule 172 of the Illinois Racing Board's Rules and Regulations of Horse Racing in support of his contention that a licensee conducting a horse racing meet is to relinquish all control over such meet to the supervising stewards. However, a perusal of these rules indicates that the pervasive powers granted to the supervising stewards relate to the *actual* running of the racing meet and not to who is to be allowed to participate. Therefore, we do not agree that, by adopting rules 23 to 30 inclusive and rules 45 and 172, the

Illinois Racing Board intended that a licensee conducting a horse racing meet should not be allowed to exclude a particular jockey from participating in its meet.

■■ While we do not agree with the plaintiff's position in these two respects, we are of the opinion that, by virtue of section 2 of the Horse Racing Act the defendant, National Jockey Club; had a quasi-monopoly over the thoroughbred horse racing during the period of the subject racing meet and, therefore, defendants could not arbitrarily and without reason or justification deny plaintiff the opportunity of participating in its meet. Section 2 of the Act deals, *inter alia*, with the allotment of racing dates. In regards to the allotment of racing dates on applications filed prior to November 1 of a particular year, section 2 states: "* * * wherever practicable there shall be no conflicts in racing dates between race tracks located within 150 miles of each other." Section 2 of the Act also states:

> "In acting upon any application filed on or after November 1 of any year, the Board shall not allot to such applicant any date or dates which conflict with the date or dates allotted to applicants who have filed their application prior to November 1 of such year, but no conflict shall be considered to exist between 2 race tracks which are located more than 150 miles apart." (Ill. Rev. Stat. 1973, ch. 8, par. 37b.)

It is apparent that our legislature, through the allotment power granted to the Illinois Racing Board by section 2 of the Act, intended to limit the competition between horse racing tracks within 150 miles of each other and to grant such tracks a quasi-monopoly during their allotted racing dates. The horse racing meet the defendants were conducting began on April 19, 1974, and was to last for 33 days. During this period the National Jockey Club had a quasi-monopoly over thoroughbred racing within 150 miles of Sportsman's Park race track.

■■ In the case of *Greenberg v. Hollywood Turf Club*, 7 Cal.App.3d 968, 86 Cal. Rptr. 885 (1970), the plaintiff was a licensed horse trainer and stable agent and was barred from entering Hollywood Park race track by the defendants, Hollywood and one James Stewart. Hollywood and Stewart responded to the plaintiff's complaint by asserting that Hollywood as a property owner had a right to keep persons it did not want off its premises. In rejecting this theory the court stated:

> "It is a matter of judicial notice that by virtue of the licensing powers of the Board, racing associations have a quasi-monopoly and that the number of tracks in operation at any one time is severely limited. (Bus. & Prof. Code, § 19530 et seq.; see also foot-

note 5, *post.*) This imposes upon Hollywood certain obligations to which other land owners are not subject." (7 Cal.App.3d 968, 976, 86 Cal. Rptr. 885, 890.)

We agree with this statement and are of the opinion that with the benefit of receiving a quasi-monopoly come corresponding obligations, one of which is to not arbitrarily exclude a jockey who desires to participate in a racing meet.

■■■ The abitrary exclusion of the plaintiff meant that he was deprived of the opportunity to engage in his chosen occupation within a reasonable geographic area and for a significant period of time. This was done without reason or justification ever being given by the defendants. As the California Appellate Court stated in *Greenberg*:

> "We do not believe, however, that in order to protect their legitimate interests, race tracks need an absolute immunity from having to justify the exclusion of trainers or stable agents from the few places where they can ply their licensed trade or can conveniently find future employment. Absolute immunities are falling into disfavor in other areas. [Citations.] We think that the general principle that a party whose conduct causes legal injury should justify himself, applies here as well." (7 Cal.App.3d 968, 978, 86 Cal. Rptr. 885, 892.)

Similarly, it is not necessary in order to protect the legitimate interests of a licensee conducting a horse racing meet in Illinois to allow such licensee to exclude arbitrarily and without reason or justification a jockey who desires to participate in the racing meet. We do not mean to intimate that a licensee conducting a horse racing meet in Illinois can never bar a jockey from participation. If a legitimate and reasonable justification for exclusion is articulated, the licensee conducting the horse racing meet would certainly be within the boundaries of acceptable behavior. However, this was not the situation in the case at bar.

The defendants rely most heavily on the case of *Martin v. Monmouth Park Jockey Club*, 145 F.Supp. 439 (D.N.J. 1956), *aff'd per curiam*, 242 F.2d 344 (3rd Cir. 1957). In that case the plaintiff, Robert J. Martin, was a jockey and had accepted engagements to ride at the Monmouth Park race track. The officials of the Monmouth Park Jockey Club notified Martin that he would not be permitted to ride at the track because of his past record. Martin had been suspended in the State of Maryland in 1950 for having placed a bet on a horse racing against one he was riding. The defendants in the case at bar cite the following from *Martin*. The court stated at page 440:

> "Although it is intensely regulated, the defendant Club is a private organization. Nothing is more elementary than its right as a private

corporation to admit or exclude any persons it pleases from its private property, absent some definite legal compulsion to the contrary."

However, there is no indication in the *Martin* decision that race tracks in New Jersey are granted by statute a quasi-monopoly over horse racing during their allotted race dates as they are in Illinois. In addition the court in *Martin* also relied on the fact that a legitimate and reasonable justification for excluding Martin had been articulated. The court stated at page 441:

"In a sport where the greatest importance should attach to dissipating any cloud of association with the undesirable, and in which the appearance as well as the fact of complete integrity is of paramount consideration, to exclude plaintiff from riding *because of his record* was an understandably warranted exercise of discretion." (Emphasis added.)

We think these factors sufficiently distinguish *Martin* from the case at bar.

Defendants also refer to the *Greenberg* case, *supra*, and express consternation with its holding in light of the fact that it cited *Martin* with apparent approval. However, as we previously stated, the court in *Greenberg* found a quasi-monopolistic situation to exist and in referring to *Martin* in a footnote found it significant, as we do, that in *Martin* a legitimate and reasonable justification for exclusion was articulated. We find no difficulty in harmonizing these two cases.

The defendants have also cited the cases of *Madden v. Queens County Jockey Club, Inc.*, 296 N.Y. 249, 72 N.E.2d 697 (1947), and *People v. Licata*, 28 N.Y.2d 113, 268 N.E.2d 787 (1971), in which the courts upheld the right of the owners of a race track to exclude patrons from attending races without reason or justification so long as the exclusion was not based on race, creed, color or national origin. However, these cases involved patrons and not a jockey who was being arbitrarily deprived of his fundamental right to engage in his chosen occupation. We do not find *Madden* and *Licata* persuasive.

We are of the opinion that the trial court acted correctly, and we, therefore, affirm its order granting the plaintiff's request for a preliminary injunction.

Affirmed.

BURMAN and JOHNSON, JJ., concur.