Filed 3/18/15  Hawkins v. State Personnel Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHEILA HAWKINS,<br><br>      Plaintiff and Appellant,<br><br>  v.<br><br>STATE PERSONNEL BOARD,<br><br>     Defendant;<br><br>DEPARTMENT OF VETERANS AFFAIRS,<br><br>     Real Party in Interest and Respondent. | C074345<br><br>(Super. Ct. No. 34-2013-80001363-CU-WM-GDS) |

On her first day back to work at real party in interest Department of Veterans Affairs (CalVet) after being demoted for harassing other employees, plaintiff Sheila Hawkins sent a harassing e-mail to an employee about that employee's work hours. Terminated, Hawkins contends that defendant State Personnel Board (Board) abused its discretion by sustaining her termination.  She also contends that the administrative law judge's credibility determination is not entitled to deference because the administrative

1

law judge (ALJ) did not refer to specific evidence to support the determination in her ruling.

We conclude the Board did not abuse its discretion in sustaining Hawkins's termination. We also conclude that the ALJ properly stated her reasons for her credibility determination.

BACKGROUND

Hawkins became an employee for the State of California in 1978. In 2002, she received a five percent salary reduction for rude and discourteous treatment of other employees. She began her work for CalVet in 2009. As a private postsecondary education administrator, she supervised other employees at CalVet, including Latanaya Johnson.

In 2009, Johnson asked to use three days of bereavement leave because of her brother's death. Hawkins denied the request and told her she would be considered absent without leave if she missed a staff meeting. Human resources intervened to allow the bereavement leave.

In 2011, Johnson confidentially expressed frustration with Hawkins's management style through e-mail. But Hawkins sent Johnson's e-mail to 11 others. Hawkins solicited other employees of the same classification as Johnson to "mentor" Johnson. And Hawkins criticized Johnson for suspending a school's participation in the education program for violation of federal law. In response to Johnson's statement that the school had violated federal law, Hawkins said, "I don't care. Make it go away." Johnson filed a formal complaint against Hawkins with CalVet's Equal Employment Opportunity Office.

Also in 2011, Hawkins berated another subordinate for not submitting a leave usage plan, when the plan had already been submitted. The subordinate also filed a complaint against Hawkins with CalVet.

CalVet opened an investigation and informed Hawkins that she no longer was supervising Johnson and directed Hawkins to have no contact with Johnson during the

2

investigation. However, Hawkins sent an e-mail to Johnson, who was allowed to telecommute, and others about a change in their office hours and directed them to report to the office within one hour.

Two other employees filed complaints against Hawkins, and she was placed on administrative time off during the investigation. She e-mailed a superior, calling a chief deputy director and other staff "liars, thieves and phonies." When she was returned to work from administrative time off and moved to a different office space, she changed the working conditions of her subordinates by requiring them to work in the office, instead of telecommuting, until further notice. Her superior intervened, requiring her to direct all communications through him. In response, on the same day, Hawkins wrote an e-mail to a superior inquiring whether the employees who filed complaints against her could be transferred to other positions.

Hawkins complained to CalVet's health and safety officer and the staff services manager about the ventilation and lighting in her office. When the health and safety officer immediately went to Hawkins's office, Hawkins instructed the officer not to take further action because the office was temporary. Later the same day, Hawkins e-mailed the health and safety officer requesting to be put back in her former office or an office similar to her former office because the ventilation and lighting in the temporary office were inadequate.

In October 2011, CalVet demoted Hawkins from her supervisory position and placed her on administrative time off for inexcusable neglect of duty, insubordination, dishonesty, discourteous treatment, willful disobedience, and other failure of good behavior, causing discredit to her or CalVet.

Nine days later, Hawkins returned to work from administrative time off. At 3:01 p.m. that day, Hawkins sent an e-mail to Johnson, whom she no longer supervised, with the following in the subject line: "Arrived @ 10am and gone for the day @ 3pm." There was no text in the body of the message. Johnson forwarded the message to Hawkins's

superiors. Because of Hawkins continuing harassment, Johnson suffered emotional turmoil and stress and was placed on medical leave.

CalVet terminated Hawkins's employment, which Hawkins appealed, along with her demotion, to the Board. An ALJ heard the case and recommended sustaining the demotion and termination, and the Board adopted the ALJ's opinion. (Hawkins does not challenge her demotion in this proceeding.)

Hawkins filed a petition for writ of administrative mandate in the superior court. (Code Civ. Proc., § 1094.5.) After oral argument, the court denied her petition.

DISCUSSION

I

*Credibility Determination*

During her testimony at the administrative hearing, Hawkins claimed that she meant to send the e-mail concerning Johnson's work hours to a supervisor rather than to Johnson. The ALJ found Hawkins's claim not credible. On appeal, Hawkins contends this credibility determination is not entitled to deference because the ALJ did not cite "specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination." (Gov. Code, § 11425.50, subd. (b).)

Generally, "[i]t is the province of the administrative agency conducting the hearing to weigh the evidence; this court may only determine whether substantial evidence supports its findings and conclusions. [Citation.]" (*Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 432.) A limited exception to this general rule exists when the hearing officer (here, the ALJ) made a credibility determination but did not cite specific evidence supporting the determination. Under such circumstances, the credibility determination is not entitled to "great weight." (Gov. Code, § 11425.50, subd. (b).)

"If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the

4

observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it."  (Gov. Code, § 11425.50, subd. (b).)

Hawkins contends the ALJ's credibility determination is not entitled to great weight because the ALJ, in her words, "cited no specific evidence of an 'observed demeanor.' "  To the contrary, the ALJ provided such an analysis.  In the decision, the ALJ wrote:

"[Hawkins's] testimony was inconsistent with the testimony of Johnson, Thayer, Eljaiek, as well as others.  Therefore, a credibility determination is required applying the factors set forth in Evidence Code section 780.

"[Hawkins] was motivated to be less than truthful in order to overturn the pending adverse actions.  Furthermore, [Hawkins]'s testimony was, at times, evasive and inconsistent with prior written and oral statements.  Finally, [Hawkins] made statements that were self-serving which were not corroborated by her own witnesses.  For example, [Hawkins] testified that she intended to send the October 19, 2011 email to Osborn because he had requested that she let him know when staff had arrived and departed.  Osborn was called as [Hawkins's] witness.  He did not corroborate [Hawkins's] testimony.

"[CalVet's] witnesses including Johnson, Thayer, Eljaiek, Albertson, Jones and Ingram testified in a straight-forward manner and there was insufficient evidence of bias or other motive to be dishonest.  Their testimony is credited over that of [Hawkins]."  (Fn. omitted.)

This was a well-reasoned and well-supported statement concerning why the ALJ did not credit Hawkins's testimony.  She noted Hawkins's bias, evasiveness, and inconsistency and that Hawkins's testimony lacked corroboration.  She also commented

5

on the weight of the opposing evidence and concluded that Hawkins was not credible. Nothing more was required.

In any event, even if the ALJ's credibility determination were not entitled to great weight, we would make the same determination if we were to make it independently. Hawkins sent the e-mail to Johnson with the following in the subject line: "Arrived @ 10am and gone for the day @ 3pm." There was no text in the body of the e-mail. Hawkins testified that she meant to send it to a supervisor to assist in tracking the hours Johnson was in the office. According to her, she mistakenly sent it to Johnson.

That testimony is simply not credible. The e-mail was actually sent to Johnson, not the supervisor. Nowhere in the e-mail did Hawkins identify Johnson. It simply said, "Arrived @ 10am and gone for the day @ 3pm," in the subject line. Also, sending it to Johnson was consistent with Hawkins's pattern of mistreating Johnson and other employees. Based on this evidence, we would make the same credibility determination.

II

*Sufficiency of Evidence*

Hawkins contends her termination for mistakenly sending another employee one e-mail that was meant to be sent to a supervisor was an abuse of discretion. Her contention suffers from two frailties from the outset: (1) the e-mail was not mistakenly sent to the other employee (as we discussed in part I of the Discussion) and (2) the e-mail was not the sole reason for her termination. Under the totality of the circumstances, upholding Hawkins's termination was not an abuse of discretion.

"[T]his appeal is governed by Code of Civil Procedure section 1094.5, subdivision (c), which provides 'abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' (Code Civ. Proc., § 1094.5, subd. (c).)" (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584.)

6

"On appeal, '[w]e apply the substantial evidence test in reviewing a decision of the board [SPB].  [Citation.]  We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision.  Its findings come before us "with a strong presumption as to their correctness and regularity."  [Citation.]  We do not substitute our own judgment if the board's decision " ' "is one which could have been made by reasonable people. . . ."  [Citation.]' " '  [Citations.]

" 'Substantial evidence' is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  [Citation.]  Such evidence must be reasonable, credible, and of solid value.  [Citation.]"  (*California Youth Authority v. State Personnel Bd., supra,* 104 Cal.App.4th at pp. 584-585.)

The ALJ found that Hawkins's continued misconduct on her first day back after she was demoted caused stress for Johnson, resulting in medical leave.  Hawkins, in the ALJ's words, "had been sent a strong and unambiguous message that her mistreatment of other employees would not be tolerated.  Despite the very serious adverse action of demotion, [Hawkins] continued her pattern of mistreatment and harassment."

The ALJ concluded that Hawkins's conduct "constitute[d] a violation of Government Code section 19572, subdivisions (e) insubordination, (m) discourteous treatment, (o) willful disobedience, and/or (t) other failure of good behavior, on or off duty, causing discredit to the employee or the appointing authority."

This decision to terminate Hawkins is supported by the evidence; it is also proportional to Hawkins's continuing misconduct.

"Generally speaking, '[in] a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.'  [Citations.]"  (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217.)  "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.  [Citations.]"  (*Constancio v. State Personnel Bd.* (1986) 179

7

Cal.App.3d 980, 990-991.) We will not disturb the penalty imposed by the Board unless we find it was "clearly excessive." (*Id*. at p. 991.)

The penalty here was not excessive. Hawkins had been penalized with a reduction in pay less than 10 years earlier for rude and discourteous conduct toward other employees. Just before her termination, she continued her harassing ways, leading to a demotion that she does not challenge. Finally, upon returning to work after the demotion, she proved that she would not change when she sent an e-mail to a fellow employee, harassing that employee about her hours in the office. Considered as a whole, the events leading up to Hawkins's termination justified that sanction.

DISPOSITION

The order denying Hawkins's petition for writ of administrative mandate is affirmed. CalVet and the State Personnel Board are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278, subd. (a)(2).)


                                                          NICHOLSON        , J.



We concur:



        RAYE           , P. J.



        ROBIE          , J.




8