[Civ. No. 15466.   First Dist., Div. Two.   Aug. 17, 1953.]

PAUL MASONI et al. (Copartners), Appellants, v. BOARD
OF TRADE OF SAN FRANCISCO et al., Respondents.

Courtney L. Moore for Appellants.

James M. Conners, Norman A. Eisner and Haskell Titchell for Respondents.

NOURSE, P. J.—This is an action for damages for unjustifiable interference with business relations. After a general demurrer to the complaint had been sustained plaintiffs refused to amend. They appeal from the adverse judgment entered accordingly.

The complaint alleges in substance: Plaintiffs are partners in a bar and restaurant business. About October 1, 1951, their partnership was in financial difficulties, owing approximately $17,000 to 65 creditors for supplies and merchandise needed for its business, and plaintiffs were trying to obtain from said creditors settlements for less than full payment or extension of time. However, Masoni, one of the partners, had ample individual means with which to pay the claims in full.

Defendants are the Board of Trade of San Francisco, hereinafter called the Board, and some of its officers, employees and attorneys. The Board has for many years engaged in the following conduct: When the Board became aware that somebody was indebted to various creditors it invited said creditors to meet with the Board at its offices and caused those that came to elect a creditors' committee, and said creditors' committee to adopt a resolution authorizing the Board to solicit from all creditors assignments of their claims to an agent of the Board, granting said assignee the right

to bring action for collection of said claims, for which collection a fee was charged to the creditors.

Defendants conspired to follow the described line of conduct as to plaintiffs and their creditors and to prevent plaintiffs from settling with any of said creditors for a lesser amount than that owed or to obtain extension of time for payment. In carrying on such conspiracy the Board obtained assignments of six creditors' claims, two to defendant Drinnen, four to defendant Ryan; these assignees filed actions in the superior court through defendants Conners and Doran as their attorneys, and through them attached the bank account of plaintiff Masoni and placed a keeper in the place of business of the partnership. In a conference between plaintiffs and the defendants Hempy and Conners as to the settlement of claims defendant Hempy informed plaintiffs that the Board would not permit Masoni to deal with individual creditors directly for the purpose of settlement, but demanded payment of all claims in full plus 8 per cent for collection fees of the Board. The Board informed plaintiffs' creditors in a circular letter that the creditors' committee had rejected a compromise because the assets of the partnership and of Masoni individually were sufficient to warrant full payment and asked creditors who wished to support the committee to execute assignments. When thereafter Masoni visited creditors to discuss a compromise they refused discussion because they had assigned their claims in response to the above circular letter. Claims of 38 creditors were so assigned, a part to each of the defendants Frey, McPherson and Meyer. These assignees also filed actions through the defendants Conners and Doran, one in the superior court and two in the municipal court, and had attachments issued and a keeper placed in the plaintiffs' place of business with instructions to impound all its receipts. Defendants further threatened plaintiffs that if they did not pay, defendants would instruct the sheriff to remove plaintiffs' stock in trade and inventory to the sheriff's warehouse. Compelled by these measures and threats plaintiffs paid some of the claims sued for with costs and sheriff's fees and deposited a cash undertaking as to the others.

The conduct of defendants was illegal because none of them except the attorneys Conners and Doran was qualified under division 3, chapter 8 of the Business and Professions Code to conduct the alleged collection activities, not having applied for or obtained a license as required by section 6870 of said code except for persons like attorneys at law exempted

by section 6854, subdivision (a), whereas section 6871 makes punishable as a misdemeanor the carrying on of such collection activities without a required license, and said conduct constituted illegal interference with the business relationship existing between the plaintiffs and their creditors and with plaintiffs' right to negotiate new contracts of compromise. Without said interference plaintiffs would have been able to reach compromises with some creditors for less than full payment. Moreover the levying was excessive. As actual damages plaintiffs claim amounts for reduction of claims not obtained, costs illegally caused and curtailment of sales by the presence of a keeper. In a separate count exemplary damages are claimed because of the malicious and oppressive character of the acts complained of.

The trial court in a letter to counsel of both sides, made part of the record, explained that it had sustained the demurrer with leave to amend because it was quite possible that plaintiffs could state a cause of action for wrongful attachment. However, in their opening brief appellants expressly state that no such action was intended or presently possible and that the gist of the action instituted was actionable interference by strangers with the business relationship of plaintiffs and their creditors motivated by a desire of gain (collection fees) and unlawful because prohibited and punishable under the code. We shall therefore in accordance with the position of appellants consider the complaint as if the measures taken for the collection of the amounts for which action was brought would not have been illegal if taken by the original creditors themselves but the alleged illegal character of the conduct of defendants was solely based on their interference as strangers, considering also their lack of licenses and their motive.

█ "Intentional and unjustifiable interference with contractual relations is actionable in California . . ." (*Speegle v. Board of Fire Underwriters*, 29 Cal.2d 34, 39 [172 P.2d 867].) █ Actionable interference of this kind is not limited to inducing breach of an existing contract or other wrongful conduct but comprises also unjustifiably inducing a third person not to enter into or continue a business relation with another. (Restatement, Torts, § 766 (a) and (b).) We quoted this section of the Restatement in full in *Remillard-Dandini Co.* v. *Dandini*, 46 Cal.App.2d 678, 680 [116 P.2d 641], in which case we held that a cause of action was stated

in a complaint which alleged that defendant for the purpose of destroying plaintiff's business not only induced creditors of plaintiff to breach their contracts with plaintiff but also caused them to demand immediate payment of plaintiff's accounts and to refuse to sell further to plaintiff on credit, so that plaintiff had to pay cash. In *Romano* v. *Wilbur Ellis & Co.*, 82 Cal.App.2d 670, 673 [186 P.2d 1012], we held, following *Speegle* v. *Board of Fire Underwriters, supra,* that unjustifiable interference with contracts terminable at will is actionable, even though the termination itself is rightful. *Sweeley* v. *Gordon,* 47 Cal.App.2d 385 [118 P.2d 16, 842], and *Colburn* v. *Sessin,* 94 Cal.App.2d 4 [209 P.2d 989], cited by the trial court and respondent for the proposition that urging another to stand on his legal rights is not actionable, may well be correctly decided under the facts of these cases, which both relate to the right to invoke the statute of frauds, but it may not be inferred from them that inducing another to stand on his legal rights cannot be actionable interference under any circumstances. (*Gruen Watch Co.* v. *Artists Alliance, Inc.,* 89 F.Supp. 564, also cited in this relation, and containing the statement that inducement of breach of contract is essential for interference liability under California law, was reversed [191 F.2d 700].) Even the right of the obligee himself is mostly qualified and may not always be exercised by all means and for all purposes. (See *American Bank & Trust Co.* v. *Federal Reserve Bank,* 256 U.S. 350, 358 [41 S.Ct. 499, 65 L.Ed. 983].) The right of a stranger to interfere is still more clearly qualified.

Whether an intentional interference by a third party is unjustifiable and actionable depends on a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances, among which the methods and means used and the relation of the parties are important. (Restatement, Torts, § 767 and comments; compare *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35, 36 [112 P.2d 631].) The right of a debtor insolvent or unable to pay his debts as they mature to try to save his business by means of a settlement with his credtiors is recognized as not only of private but also of social importance. (Compare the wide opportunity for arrangement offered in the Bankruptcy Act.) A third party, who without any special relation to the credtiors, with no better objective than ill will, and by unfair means, induces the creditors to stand on their legal

rights and to destroy the debtor's business may well be liable for his interference under the above rule.

However, the facts here alleged are completely different. The debtor is not unable to pay, but one of the partners, fully liable for the debts of the partnership (Corp. Code, § 15015) is alleged to have ample means to pay in full. Payment or undertaking to pay in full is alleged without any allegation of destruction of the business as a result. The Board of Trade of San Francisco is apparently an association of merchants, manufacturers, etcetera, who promote cooperation of members of their class with respect to insolvent or non-paying debtors, an, in itself, legitimate purpose for such an organization. (Compare *Speegle* v. *Board of Fire Underwriters, supra,* 29 Cal.2d at page 40.) The means here alleged to have been used to oppose plaintiffs' attempt to avoid full payment of their debts, to wit, by truthfully informing the creditors of plaintiffs' ability to pay and by offering and rendering their services as to the collection of the claims by legal means, are not unfair, if for the moment we exclude the question of the lack of license. The motive of gain injected by appellants in this subject is in itself not objectionable. Legal and medical advice are considered of high social usefulness although professional fees are charged. There is no allegation of any abuse in relation to charges. If the defendants had been qualified to act as a collection agency, there would have been no basis for considering their conduct as unjustifiable interference and the complaint would not have stated a cause of action.

The question remains whether the addition of the allegation that defendants, except the two attorneys, were not so qualified because of their lack of licensing is sufficient to perfect the statement of a cause of action for unjustifiable interference. No case from any jurisdiction has been cited by appellants or found by us in which it was held that an interference with contractual relations otherwise unobjectionable becomes actionable in damages solely because the actor had not obtained a license as required for the acts that constituted the interference. The absence of any authority to that effect is understandable. When the interference is otherwise wholly unobjectionable no indemnification is required to do justice to the person interfered with. Thus in the case before us any recovery by the recalcitrant debtors would be felt as undeserved. Even if the assignments were not legally

valid, plaintiffs were not damaged thereby, because defendants received payment actually as the agents for the original creditors, who at any rate were satisfied. The imposition of liability on defendants could at most be justified as a further deterrent from infringement of the licensing requirement, an argument used to defend the unenforceability of the contracts of certain unlicensed persons. In the latter cases the unwillingness of the courts to lend their aid to the enforcement of forbidden contracts had to overcome their aversion to forfeitures. Here we are not asked to enforce illegal contracts but actively to impose as a sanction of the licensing regulation a liability which must result in an otherwise unjustified enrichment. Where there is neither statutory nor case authority which requires us to do so we shall not initiate a policy which we consider inequitable and undesirable.

Judgment affirmed.

Dooling, J., concurred.

A petition for a rehearing was denied September 16, 1953, and appellants' petition for a hearing by the Supreme Court was denied October 15, 1953. Carter, J., and Spence, J., were of the opinion that the petition should be granted.