[L. A. No. 26890. In Bank. Dec. 4, 1962.]

H. B. K. WILLIS, Plaintiff and Appellant, v. SANTA ANA COMMUNITY HOSPITAL ASSOCIATION et al., Defendants and Respondents.

Jacobs, Jacobs, Nelson & Witmer and M. Lyle Nelson for Plaintiff and Appellant.

McCloskey, Wilson & Mosher and Theodore C. Carlstrom as Amici Curiae on behalf of Plaintiff and Appellant.

W. Mike McCray and H. Warren Knight for Defendants and Respondents.

Peart, Baraty & Hassard, Beardsley, Hufstedler & Kemble, Musick, Peeler & Garrett, James E. Ludlam and Charles F. Forbes as Amici Curiae on behalf of Defendants and Respondents.

GIBSON, C. J.—Plaintiff, an osteopathic physician and surgeon licensed to practice in California, brought this action to recover damages from defendants, the Santa Ana Community Hospital Association, its named directors and administrator, three osteopathic physicians, and two doctors of medicine. The complaint seeks relief under both the Cartwright Act (Bus. & Prof. Code, §§ 16700-16758) and common law principles. Plaintiff appeals from a judgment of dismissal entered when he failed to amend after the trial court sustained general demurrers to the complaint. We have concluded that the Cartwright Act is not applicable but that the complaint states a cause of action at common law.

The complaint may be summarized as follows: Defendants, with malice and intent to oppress, entered into a conspiracy to dominate the practice of medicine by licensed osteopathic physicians and surgeons in Orange County, to prevent some osteopaths from acquiring membership on the staffs of hospitals in the Santa Ana area in which membership is necessary before they can properly treat their patients, to restrain and eliminate fair competition in the medical field in the county, and to enhance the practice of defendant physicians. Pursuant to the conspiracy, plaintiff's membership on the osteopathic staff of defendant hospital was terminated in 1959 without any hearing or assigned reason, and defendants indicated to the public that he was expelled because of questionable competence and reputation. As a result, plaintiff was prevented from acquiring membership on the osteopathic staffs of other hospitals having adequate facilities and was unable to place his patients in such hospitals. Plaintiff's professional ethics and qualifications are of the highest caliber, and, solely by reason of the conspiracy, he has lost and will lose patients, thereby suffering loss of income. Plaintiff prays for damages in an amount three times that of his alleged losses of income and for punitive damages.

## Cartwright Act

The Cartwright Act provides that, with exceptions not relevant here, every "trust" is unlawful and void and that any person injured in his business or property by anything declared unlawful in the act may recover three times

the damages sustained by him. (Bus. & Prof. Code, §§ 16726, 16750.) The term "trust" is defined as "a combination of capital, skill or acts by two or more persons" for any of a number of purposes, of which the following are pertinent: "(a) To create or carry out restrictions in trade or commerce. (b) To limit or reduce the production, or increase the price of merchandise or of any commodity. (c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity." (Bus. & Prof. Code, § 16720.)

The language relating to the type of combination made unlawful does not include the term "profession," and the words used are subject to meanings of varying breadth. For example, the word "trade" can be used both in the broad sense of anything practiced as a means of livelihood or in the more restricted sense of a mechanical occupation "distinguished from the liberal arts and learned professions, and from agriculture." (Black's Law Dictionary (4th ed. 1951) p. 1665; see also Webster's Third New Internat. Dict. (1961) p. 2421.) Although there are cases which have given the statutory language a rather broad meaning to include, for example, barbering and maintenance services (*Messner* v. *Journeymen Barbers etc. International Union,* 53 Cal.2d 873, 886 [4 Cal.Rptr. 179, 351 P.2d 347] ; *People* v. *Building Maintenance etc. Assn.,* 41 Cal.2d 719, 723 [264 P.2d 31]), there is no California decision bringing the professions under the act.

It is significant that, in related legislation added to the Business and Professions Code at the same time as the Cartwright Act, the word "profession" was included among the terms describing the scope of the legislation, notwithstanding the fact that the words "trade" and "business" were also used. (Bus. & Prof. Code, § 16600 [making void contracts restraining persons from engaging in "a lawful profession, trade, or business of any kind"].) The difference in terminology between this section and the Cartwright Act may be viewed as indicating that the act was not intended to apply to the professions.

We are of the view that antitrust legislation providing for treble damages should not be applied to the professions unless the language clearly calls for such an application, and this, as we have seen, the language of the Cartwright Act does not do.

## Common Law Principles

Since the Cartwright Act is not applicable to restraints on the practice of medicine, no inconsistency arises from the application of the common law to the subject. Nothing in the act discloses an intent to supersede the common law with respect to matters not covered in the legislation, and an indication to the contrary is found in the provision that the act is "cumulative" of "any other provision of law relating to the same subject in effect May 22, 1907." (Bus. & Prof. Code, § 16700.)

 There is an established principle at common law that an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. (*Guillory* v. *Godfrey*, 134 Cal.App.2d 628, 632 [286 P.2d 474]; *Masoni* v. *Board of Trade of S. F.*, 119 Cal.App.2d 738, 741 [260 P.2d 205]; see Rest., Torts, § 766, cl. (b); cf. *Lipman* v. *Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 232 [11 Cal. Rptr. 97, 359 P.2d 465].) Whether there is justification is determined not by applying precise standards but by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on the one hand and permitting the interference on the other. (*Freed* v. *Manchester Service, Inc.*, 165 Cal.App.2d 186, 190-191 [331 P.2d 689]; *Masoni* v. *Board of Trade of S. F.*, *supra*, 119 Cal.App.2d 738, 742; see Rest., Torts, § 767.)

 A cause of action is stated under the above principles where, as here, it is alleged that a physician of the highest qualifications is denied access to necessary hospital facilities as the result of a conspiracy designed to restrain competition and deprive him of his practice in order to benefit competing members of the conspiracy. Similar allegations were held to state a cause of action at common law in *Tatkin* v. *Superior Court*, 160 Cal.App.2d 745, 754-757, 764-765 [326 P.2d 201]. We reject the suggestion that, in order to maintain professional standards and medical care of high quality, private hospitals and their staffs must have absolute discretion to exclude doctors from membership, without possibility of a suit for damages resulting from the exclusion. The burden of defending suits cannot warrant denial of relief to one in-

jured by wholly unjustifiable conduct such as is alleged in the present case.

The judgment is reversed.

Traynor J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and White, J.,* concurred.

*Assigned by Chairman of Judicial Council.