[Civ. No. 40822. First Dist., Div. Two. Mar. 22, 1978.]

FRED LOWELL, JR., Plaintiff and Appellant, v.
MOTHER'S CAKE & COOKIE COMPANY,
Defendant and Respondent.

16

**COUNSEL**

Carr, Smulyan & Hartman and George M. Carr for Plaintiff and Appellant.

Knox, Ricksen, Snook, Anthony & Robbins and Thomas A. Palmer for Defendant and Respondent.

## OPINION

**KANE, J.**—Plaintiff, Fred Lowell, Jr., the sole owner of Lowell Freight Lines, Inc., a common carrier, appeals from a judgment of dismissal entered after respondent's demurrer to the second amended complaint was sustained without leave to amend.

Appellant filed his original complaint (Complaint) on January 30, 1976, alleging causes of action for interference with prospective economic advantage, and violations of the Cartwright Act (Bus. & Prof. Code, §§ 16700-16758) and the California Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.). Respondent's demurrer to the Complaint was sustained with leave to amend as to the cause of action for wrongful interference with prospective economic advantage, and without leave to amend as to the second cause of action charging violations under the Cartwright Act and the Unfair Practices Act. Appellant filed his first amended complaint on May 20, 1976, alleging a single cause of action predicated on the theory of wrongful interference with prospective economic advantage. After respondent's demurrer to the first amended complaint was sustained with leave to amend, appellant filed his second amended complaint (hereafter Second Complaint) reiterating his cause of action based on tortious interference with prospective economic advantage. Respondent demurred to the Second Complaint on the grounds that it failed to state a cause of action and that it was uncertain. This time the trial court sustained respondent's demurrer without leave to amend, and dismissed the action.

The principal issues on appeal are whether the complaints to which the demurrers were sustained without leave to amend alleged actionable wrongs (1) for tortious interference with prospective business advantage; and (2) for violations of the antitrust and unfair practices statutes.

■ *Intentional Interference With Prospective Business Advantage*: In addressing the first issue, we initially note that the basic principles underlying the tort of inducing breach of contract have been extended to impose liability for intentional interference with business relations or advantages which are merely prospective and not subject to an existing, legally binding agreement (*Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865]; *Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 994 [135 Cal.Rptr. 720]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 392, p. 2643). While the criteria of this new tort are developing and admittedly vague, it is widely recognized that in

order to be actionable the interference with prospective economic advantage or advantageous business relationship must be *unjustified and/or without privilege.* As has been pointed out, "one who *unjustifiably* interferes with an advantageous business relationship to another's damage may be held liable therefor." (*Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19], italics added. See also *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867]; *Shida* v. *Japan Food Corp.* (1967) 251 Cal.App.2d 864, 866 [60 Cal.Rptr. 43]; *Masoni* v. *Board of Trade of S.F.* (1953) 119 Cal.App.2d 738, 741 [260 P.2d 205].) Restatement of Torts section 766, likewise provides in part that "one who, *without a privilege* to do so, induces or otherwise purposely causes a third person not to . . . (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby." (Italics added.)

The unjustifiability or wrongfulness of the act may consist of the *methods* used *and/or* the *purpose* or motive of the actor. On one hand it is emphasized that the wrong consists of intentional and *improper methods* of diverting or taking business from another which are not within the privilege of fair competition (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 715 [104 Cal.Rptr. 96]; 4 Witkin, Summary of Cal. Law, *supra).* On the other, it is underscored that the cases involving interference with prospective business advantage " 'have turned almost entirely upon the *defendant's motive or purpose, and the means* by which he has sought to accomplish it. As in the case of interference with contract, *any manner of intentional invasion of the plaintiff's interests may be sufficient if the purpose is not a privileged one . . .*' " (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra,* at p. 716, italics added; Prosser on Torts (4th ed. 1971) p. 952). In accordance therewith it has been held that an action for interference with prospective business advantage will lie where the right to pursue a lawful business is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 319 [70 Cal.Rptr. 849, 444 P.2d 481]; *Willis* v. *Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568]; *Guillory* v. *Godfrey* (1955) 134 Cal.App.2d 628, 632 [286 P.2d 474]; *Masoni* v. *Board of Trade of S.F., supra,* 119 Cal.App.2d at p. 741). ■ Finally, it bears special emphasis that while the defendant's culpable intent and the damages resulting from the interference are elements of the cause of action which must be pleaded and proved by the plaintiff, the defendant's justification is not an ingredient of the cause

of action, but rather constitutes an affirmative defense (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra,* at p. 714; Prosser on Torts, *supra,* at p. 953). As has been said in *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 207 [14 Cal.Rptr. 294, 363 P.2d 310], "Justification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint." (Accord: *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 376 [122 Cal.Rptr. 732]; *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra.*)

■ When examined in light of the foregoing principles we believe the Second Complaint alleges facts sufficient to state a cause of action for tortious interference with prospective business advantage and at the same time the requisite justification fails to appear upon the face of the complaint. As a consequence, we hold that the trial court erred in sustaining respondent's demurrer to the Second Complaint and in dismissing appellant's action.

The Second Complaint in essence avers that appellant was the sole owner of Lowell Freight Lines, Inc., a trucking firm (Company). For over five years the Company performed delivery services for respondent pursuant to an oral contract. The revenue derived from that contract amounted to approximately 40 percent of the gross income of appellant's business. Appellant intended to sell the Company, and he received several offers from potential purchasers. One of these offers, which was conditioned on the Company's continued business with respondent, was for approximately $200,000. Respondent, however, intentionally interfered with the consummation of this agreement by informing the prospective purchasers that the delivery contract would be terminated if the Company was sold to a third person. The purpose of the interference was to discourage potential buyers from purchasing the Company from appellant and thereby depress its purchase price substantially below its market value. Respondent succeeded in its scheme. The Company was sold to respondent for about $17,400 instead of its true market value of $200,000, and as a result appellant suffered damages in the sum of $183,000.

The facts alleged in the Second Complaint, which for the purpose of a demurrer must be regarded as true (*Mercer* v. *Elliott* (1962) 208 Cal.App.2d 275, 279 [25 Cal.Rptr. 217]), thus clearly establish that respondent intentionally interfered with a prospective advantageous business relationship, and that the interference resulted in substantial

damages to appellant. These allegations, of course, are sufficient to state a valid cause of action for interference with prospective economic advantage *unless it can be said that the facts averred in the complaint show justification or privilege as a matter of law* (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra*; Prosser on Torts, *supra,* at p. 953).

This leads us to the very heart of the dispute, i.e., whether the facts alleged in the Second Complaint divulge upon their face that the acts complained of were justified or privileged. Respondent, in effect, argues that in the absence of a binding contract it was free to terminate its business relationship with appellant or any potential successor, and was also at liberty to inform the future buyers that respondent did not intend to utilize the services of the Company if the latter changed hands. Since the means adopted and utilized by respondent were entirely proper and lawful, continues the argument, no actionable wrong was alleged or committed, even if the Second Complaint charged that the steps complained of were taken for an improper purpose or motive. Respondent's position is unacceptable for a number of considerations.

■■ ■■■ One, as spelled out above, even if the means used by the defendant are entirely lawful, intentional interference with prospective economic advantage constitutes actionable wrong *if* it results in damages to the plaintiff, *and* the defendant's conduct is not excused by a legally recognized privilege or justification (*Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d 305, 319; *A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc., supra,* at p. 716; Rest., Torts, § 766).[1]

■ Two, as a general rule, the determination of whether the defendant's conduct of interfering with existing contracts with third persons or prospective economic advantage is privileged comprises a factual issue to be decided upon all the circumstances of the case. "*Whether an intentional interference by a third party is justifiable depends upon* a balancing of the importance, social and private, of the objective

---

[1]Respondent at oral argument advanced for the first time the theory of justification based upon the giving of advice as described in the Restatement of Torts section 772, and discussed in *Walsh* v. *Glendale Fed. Sav. & Loan Assn.* (1969) 1 Cal.App.3d 578, 588-589 [81 Cal.Rptr. 804]. Reliance on this theory is misplaced since, as pointed out in comment a to the Restatement of Torts section 772, one of the conditions of such justification is "(1) that the advice be requested, . . ." In the case at bench nothing in the allegations of the Second Complaint remotely suggests that respondent was requested by the prospective purchasers to give them any advice concerning the purchase of appellant's business.

advanced by the interference against the importance of the interest interfered with, *considering all circumstances* including the nature of the actor's conduct and the relationship between the parties." (*Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d at p. 206, italics added; *Greenberg* v. *Hollywood Turf Club* (1970) 7 Cal.App.3d 968, 977 [86 Cal.Rptr. 885]; see also *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186 [331 P.2d 689]; *Masoni* v. *Board of Trade of S.F., supra,* 119 Cal.App.2d 738.) In harmony therewith, Restatement of Torts section 767, provides that "In determining whether there is a privilege to act in the manner stated in § 766, the following are important factors: [¶] (a) the nature of the actor's conduct, [¶] (b) the nature of the expectancy with which his conduct interferes, [¶] (c) the relations between the parties, [¶] (d) the interest sought to be advanced by the actor and [¶] (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand." Significantly enough, comment d to section 767 spells out that *"the question on the issue of privilege is whether the actor's conduct was fair and reasonable under the circumstances . . ."* (italics added).

██ Three, but aside from the general rule, respondent's interference here may not *eo ipso* be justified by virtue of certain special privileges carved out for competitors and persons having a financial interest in the business of the person induced either (Rest., Torts, §§ 768, 769). Section 768 of the Restatement of Torts explicitly provides that the privilege accorded therein applies only to a competitor of the defendant.[2] Appellant and respondent here were involved in entirely different kinds of businesses, and by no stretch of the imagination may they be said to have been competitors to each other. At the same time respondent fails to qualify for an *ipso jure* privilege under Restatement of Torts, section 769, as well. The latter states that "One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor [¶] (a) does not employ improper means, and [¶] (b) acts to protect his interest from being prejudiced by the relation." Clarifying the meaning of this section, comment a emphasizes that the financial interest privileged under section 769 is an interest in the nature of an investment (i.e., interest of a part owner, partner, stockholder and the like). However, it is made clear that the interest of a person who looks to the other for business and will lose business opportunities if the other enters

---

[2]Restatement of Torts section 768, sets out in part that "(1) One is privileged purposely to cause a third person not to enter into or continue a business relation *with a competitor of the actor."* (Italics added.)

into the business relations involved is not a financial interest within the meaning of section 769. ■ Even more to the point, the case law underlines that the privilege that arises by reason of section 769 is at most a qualified privilege which depends for its existence upon the circumstances of the case. It is essentially a state-of-mind privilege, and therefore its existence cannot be satisfactorily determined on the basis of the pleadings alone. The resolution of the issue turns on the defendant's predominant purpose in inducing the breach and consequently the matter is to be determined on the basis of proof rather than of pleading (*Culcal Stylco, Inc.* v. *Vornado, Inc.* (1972) 26 Cal.App.3d 879, 883 [103 Cal.Rptr. 419]; see also *Tye* v. *Finkelstein* (D.Mass. 1958) 160 F.Supp. 666, 668; Rest., Torts, § 769, com. b).

The foregoing discussion clearly indicates that the privilege or justification which would exempt respondent from liability as a matter of law does not appear on the face of the Second Complaint. It follows that it constitutes an affirmative defense which may be raised only by answer (Code Civ. Proc., § 430.30).

. Respondent's contentions that the general demurrer to the Second Complaint was properly sustained for the additional reasons that no causal relationship between respondent's conduct and appellant's damages was alleged, and that the Second Complaint was uncertain, may be briefly disposed of. The Second Complaint as a whole demonstrates that the damages alleged therein were incurred by the appellant due to the respondent's unlawful interference with the prospective business deal between appellant and the potential buyers. Thus, the requisite nexus or causation between appellant's damages and respondent's act was sufficiently alleged. ■ With regard to respondent's second argument, suffice it to say that the imprecision or uncertainty of a complaint is considered a curable defect which is subject to special, rather than general, demurrer. It is axiomatic that where, as here, the complaint is sufficient against a general demurrer, the sustaining of the demurrer without leave to amend is totally unwarranted for uncertainties or ambiguities in the pleadings (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942) 20 Cal.2d 713, 718-719 [128 P.2d 522, 141 A.L.R. 1358]).

*Antitrust and Unfair Practices Violations*: While we hold that the allegations of the Second Complaint gave rise to a cause of action for tortious interference with prospective business advantage and therefore

the sustaining of the demurrer to that cause of action was reversible error, we are unable to agree with appellant that the facts alleged in the original complaint established a separate and distinct cause of action under the Cartwright Act and the California Unfair Practices Act.

■ The Cartwright Act (Act) is the popular name for the California antitrust law which is contained in Business and Professions Code[3] sections 16700-16758. Section 16720 sets forth specific categories of conduct which violate the Act. In sum, the Act prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition in the variety of ways listed in the statute (*Bondi* v. *Jewels by Edwar, Ltd.* (1968) 267 Cal.App.2d 672 [73 Cal.Rptr. 494]). ■ Though not specifically listed, monopoly is a prohibited restraint of trade. ■ The offense of monopoly involves the willful acquisition of the power to control prices or exclude competition from commerce in a particular geographic area with respect to a specific product (*United States* v. *Grinnell Corp.* (1966) 384 U.S. 563 [16 L.Ed.2d 778, 86 S.Ct. 1698]; *United States* v. *Aluminum Co. of America* (2d Cir. 1945) 148 F.2d 416).

The allegations of the Complaint here totally failed to establish the existence of monopoly proscribed by both the federal and state antitrust laws. On the contrary, the averments set out in the Complaint ipso facto ruled out that the acquisition of a trucking company which derived only 40 percent of its revenue from the carriage of respondent's goods, could or would grant the respondent the power to control prices in the cookie or transportation markets or to exclude competition in any market area with respect to either activity.

■ But, quite apart from the aforestated reasons, there is another consideration why we are compelled to conclude that the Complaint failed to state a cause of action under the Act. It is well recognized that in order to be actionable the injury to the plaintiff's business must flow directly from the unlawful combination or trust which was brought about to restrict trade or commerce within the meaning of the Act. As pointed out in *Clark* v. *Lesher* (1951) 106 Cal.App.2d 403, 407 [235 P.2d 71]: "It was early pointed out by the appellate courts of the state that *the damages recoverable under* the foregoing provisions of *the act must be such,* and could only be such, *as resulted directly from* the fact of the

---

[3]Unless otherwise indicated, all references will be made to the California Business and Professions Code.

*existence of the unlawful combination or trust and flowed solely from restrictions in trade or commerce* fostered thereby. We quote the following from *Munter* v. *Eastman Kodak Co.,* 28 Cal.App. 660, 665 [153 P. 737]:

" ' ". . . While one whose business or property has been injured solely because of the restrictions in trade carried out by a trust organized and maintained for that purpose may maintain an action under the provisions of the anti-trust law for double the damages he has actually suffered from the injury so inflicted, *yet he could not maintain an action* based upon said law *if the injury,* although directly the result of the wrongful acts of the trust or the constituent members thereof, *did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination.*" ' " (Italics partially added. See also *Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723, 728 [129 Cal.Rptr. 188].)

In the instant case, the Complaint clearly articulates that the damage sued for arose not because of any restriction in trade or commerce but rather from the alleged wrongful act of the respondent which "by threats and intimidations frightened away prospective purchasers and by threats and coercion forced the plaintiff to sell his corporation to defendant MOTHER'S . . . at substantially less money . . . than what plaintiff would have made had he continued to operate the truck line or if it had been sold at a competitive price on the open market."

In sum, the Complaint fails to claim the existence of a combination or trust for the purpose of restricting the flow of trade or commerce. Furthermore, the Complaint alleges that the damages arose not by reason of any restriction of trade or commerce, but rather from the distinct fact that in an effort to depress the market price of the Company respondent scared away the potential buyers by threats and intimidations and forced appellant to sell his firm to respondent at substantially below its market value. Since the facts alleged in the Complaint did not state a cause of action cognizable under the Act, and there was no reasonable probability that the defects could be cured by an eventual amendment, the sustaining of the demurrer without leave to amend as to the second cause of action was entirely proper (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219]).

█ Finally, we briefly observe that the allegations of the Complaint did not state a cause of action under the Unfair Practices Act either (§ 17000 et seq.). In essence, this latter statute prohibits selling articles below cost, or giving them away for the purpose of injuring competitors or destroying competition (1 Witkin, Summary of Cal. Law, *supra*, § 458, at p. 387). The Complaint is entirely devoid of any allegation or claim that respondent's conduct constituted prohibited pricing policy or marketing method proscribed by the Unfair Practices Act.

The judgment insofar as it dismisses the first cause of action of the second amended complaint (interference with prospective economic advantage) is reversed; the judgment insofar as it dismisses the second cause of action of the original complaint (relating to claims under the Cartwright Act and the California Unfair Practices Act) is affirmed. Each party to bear their own costs.

Taylor, P. J., and Rouse, J., concurred.