THEME PROMOTIONS, INC., a California corporation, dba Theme Co-op Promotions, Plaintiff-counter-defendant—Appellant,

v.

NEWS AMERICA FSI, a Delaware corporation, Defendant-counter-claimant—Appellee.

No. 01–16329.

D.C. No. CV–97–04617–VRW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2002.

Decided May 3, 2002.

Before O'SCANNLAIN and TALLMAN, Circuit Judges, and KING*, District Judge.

MEMORANDUM **

I.

Theme Promotions, Inc. (Theme) appeals the district court's rulings dismissing some of its claims and awarding summary judgment on others to defendant News America FSI, Inc. (News). We have jurisdiction under 28 U.S.C. § 1291. We affirm the award of summary judgment on the Lanham Act claim but reverse as to all the other claims.

* Honorable Samuel P. King, Senior United States District Judge, District of Hawaii, sitting by designation.

Because the parties are familiar with the facts, we do not recite the details here. We review orders granting a motion to dismiss de novo. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir.1999). Antitrust cases do not require a heightened form of pleading. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). Antitrust laws are designed to protect "competition, not competitors" so the plaintiff must have suffered injury "in the market where competition is being restrained." *American Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055–57 (9th Cir.1999) (internal citation omitted).

The district court dismissed Theme's original complaint for two reasons: (1) failure to identify the market in which both Theme and News operated and (2) failure to allege antitrust injury, that is, injury to competition in the marketplace, rather than merely injury to Theme itself.

Theme amended its complaint, but the district court again dismissed the antitrust claims—this time with prejudice—though the court acknowledged that Theme had "met its burden of setting forth a theory" as to why the free-standing insert (FSI) coupon market was a market without suitable substitutes. The district court once again held that Theme had failed to contend that it suffered antitrust injury because it had not "properly pled that the challenged actions affect competition and not simply competitors." It faulted Theme for not alleging that "News America's policy affects the output of FSIs or increases their prices," and concluded that it could not "find an injury to competition in the absence of evidence that News America's policy decreases output, raises prices,

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

harms the quality of goods or otherwise affects allocative efficiency in the market for advertising and promotional services provided in conjunction with the placement, publication and distribution of FSIs in newspapers."

■ Dismissal with prejudice was inappropriate. Theme alleged that News's change in position regarding its right of first refusal provisions (ROFRs) in contracts with packaged goods manufacturers (PGMs), even when Theme sought to create a tie-in promotional campaign, "resulted in a decrease in the number of overall FSI pages and an increase in the cost of advertising per unit sold."

A "decrease in the number of overall FSI pages" is insufficient, because Theme is required to have sustained an injury "in the market where competition is being restrained." *American Ad. Mgmt.*, at 1055–57; *Big Bear Lodging*, 182 F.3d at 1101 ("Proving injury to competition in a rule of reason case almost uniformly requires a claimant to prove the relevant market and to show the effects upon competition within that market.") (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir.1988)). Theme is not in the business of FSI publishing and distribution. It is only in the business of arranging FSI promotional and advertising services.

Still, the second half of Theme's allegation of harm to competition addresses the appropriate market because "an increase in the cost of advertising per unit sold" would have a direct effect on the availability of promotional and advertising services. As pled, Theme's allegation asserts an injury to consumers and competition in the relevant market, not just its own business. *See Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 508–09 (9th Cir.1989) (noting that while removal of competitors from a market does not necessarily indicate harm to competition, "con-vergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few"). While News contends that Theme merely pled antitrust "buzzwords" and made conclusory allegations without providing a detailed analysis of the economic effects of increased costs on output, "[t]he Federal Rules of Civil Procedure do not require the plaintiff to plead the particulars of his claim." *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir.1994).

While Theme may not have provided the most detailed description of facts from which to infer antitrust injury, its allegation is sufficient to survive a motion to dismiss in an antitrust case where "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly" because "the proof is largely in the hands of the alleged conspirators." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746–47, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

Although conclusory allegations without more are not enough to defeat a motion to dismiss, *see McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988), Theme's complaint does not merely state that it has suffered antitrust injury. Rather, Theme specifically alleged that News caused "an increase in the cost of advertising per unit sold." This fits with the requirement that the antitrust injury must be of the type that antitrust laws were designed to prevent because the injury stems from a reduced ability to compete, not because of increased competition in the marketplace. *See* William C. Holmes, ANTITRUST LAW HANDBOOK 768 (2002).

II.

■ Antitrust standing is also required under California's Cartwright Act, but Cal-

ifornia law grants antitrust standing more liberally than does federal law. *Knevelbaard*, 232 F.3d at 987. In dismissing the state antitrust claim the district court relied heavily on its reasoning in dismissing the federal antitrust claims and stated that Theme had not alleged injury to competition. Because we reverse the dismissal of the federal antitrust claims, we also reverse the dismissal of the broader, more liberal state antitrust claims.

### III.

To sustain a claim of intentional interference with prospective economic advantage under California law, a plaintiff must plead that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 831 (9th Cir.2001) (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740, 751 (1995)). The other elements of the tort include "(1) an economic relationship between the plaintiff and another containing a probable future economic benefit or advantage to plaintiff, (2) defendant's knowledge of the existence of the relationship, (3) defendant's intentional conduct designed to interfere with or disrupt the relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts." *Id.* at n. 8.

In its amended complaint Theme alleged that News intentionally interfered with its prospective economic relationships with companies such as Benevia and Gillette by (1) changing its policy regarding its ROFRs, (2) threatening litigation and (3) engaging in other anticompetitive behavior.

The district court dismissed this claim because it found Theme's ability to have future contractual relationships with the companies with whom it currently did business to be too speculative. The district court cited *Youst v. Longo* for the proposition. *See* 43 Cal.3d 64, 233 Cal.Rptr. 294, 729 P.2d 728 (1987). But *Youst* was a unique case where the California Supreme Court held that "as a matter of law and public policy" the tort of intentional interference with prospective economic advantage is not available "in the context of a sporting event." 233 Cal.Rptr. 294, 729 P.2d at 732.

■ Theme alleged that News's use of its ROFRs was unlawful and that News used these provisions to interfere with Theme's prospective economic opportunities with PGMs. Thus, the complaint meets the threshold requirement under California law pertaining to unlawful conduct beyond the interference itself.

The district court noted that Theme does not enter long-term contracts with those with whom it does business so that its relationship with its customer "ceases at the end of the promotion." While this fact may make prospective economic advantages less certain, it seems foolhardy to deny that Theme obtains some repeat business after having completed a successful promotion. Theme alleged it had relationships with certain companies and expected to continue to work with them in the future. This is sufficient at the complaint stage of litigation.

■ The district court also noted News's actions may have been privileged. California's "competition privilege" applies if "(a) the relation between the competitor and the third party concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least

in part to advance his interest in his competition with the other." *Navellier v. Sletten,* 262 F.3d 923, 937–38 (9th Cir.2001).

In this case, whether News used "improper means" or "create[d] or continue[d] an illegal restraint of competition" encompasses the whole dispute. The district court could not determine the lawfulness of the ROFRs on the basis of Theme's complaint. *See Lowell v. Mother's Cake & Cookie Co.,* 79 Cal.App.3d 13, 144 Cal.Rptr. 664, 669–70 (1978) ("[A]s a general rule, the determination of whether the defendant's conduct of interfering with existing contracts with third persons or prospective economic advantage is privileged comprises a factual issue to be decided upon all the circumstances of the case.").

### IV.

We review awards of summary judgment de novo. *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir.2001).

California's unfair competition law prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]" as well as "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200 (2001). "Unfair" conduct under this section is conduct "that threatens an incipient violation of antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cal.1999).

■ The record indicates little if any evidence that News's ROFRs were unlawful. As the district court noted:

"Unfortunately for [Theme], PGMs voluntarily enter into ROFR agreements to secure favorable rates and placements. A PGM that seeks to participate in [Theme]-sponsored FSI programs can choose (1) not to enter into ROFR agreements, and thus remain free from such an obligation; (2) to inform [Theme] of its ROFR arrangements and request to be partnered with a PGM that is either a free-agent or has an ROFR with the same publisher; or (3) request an exemption from the ROFR, in a situation in which the PGM desires a tie-in arrangement with an entity which has an ROFR with the competing FSI publisher. Although this situation may be inconvenient for [Theme], it hardly seems 'unworkable.' "

Moreover, Theme itself has entered into exclusive dealings at times with both News and Valassis. Thus, as the district court noted: "[Theme] wants simultaneously to have and to eat its proverbial cake. [Theme] hopes to negotiate and benefit from desirable terms in ROFR contracts with one or the other FSI publishers, yet deny the validity of such arrangements when entered into by its clients."

Still, because Theme's claim of unlawfulness of News's actions is tied to Theme's antitrust claims, we reverse so that the district court can resolve all of the claims at once.

### V.

As was the case with the § 17200 claim, while we understand the district court was in a better position to evaluate the claim of negligent interference with prospective economic advantage on a motion for summary judgment, we reverse so as to allow Theme a full opportunity to discover its case.

### VI.

Finally, we affirm the award of summary judgment on the Lanham Act claim.

Under the Lanham Act parties are liable where they "use[ ] in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her or another person's goods, services, or commercial activities...". 15 U.S.C. § 1125(a). "Statements of opinion are generally not actionable under the Lanham Act." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999).

█ The district court correctly awarded summary judgment on the Lanham Act claim to News. Theme offered evidence that News told PGMs that there was no change in the interpretation or enforcement of ROFRs; that ROFRs prohibited PGMs from certain arrangements; and that Theme was merely an agent for PGMs rather than an independent third party in the marketplace. Theme also offered evidence that News questioned Theme's business ethics and practices.

Opinions about and interpretations of the ROFRs in contracts are not the sort of "facts" that are actionable under the Lanham Act. Likewise, expressions of Theme's business practices and ethics are also a matter of opinion. Moreover, misrepresentation of another's goods or services must be in the context of "commercial advertising or promotion," *id.* at 734-35, so internal discussions of Theme's business practices and ethics at News do not qualify.

### VII.

For the foregoing reasons, we affirm the district court's award of summary judgment on the Lanham Act claim but reverse as to all other claims. The case is remanded to permit discovery to proceed on the remaining claims in the First Amended Complaint. Each party shall bear its own costs.

AFFIRMED IN PART; REVERSED IN PART.